# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-KA-00722-SCT

*JUSTIN HAYNES*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/02/2005 |
| TRIAL JUDGE: | HON. C. E. MORGAN, III |
| COURT FROM WHICH APPEALED: | ATTALA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | EDWARD C. FENWICK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JOSE BENJAMIN SIMO |
| DISTRICT ATTORNEY: | DOUG EVANS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/08/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.	After an Attala County grand jury indicted sixteen-year-old Justin Haynes on charges of murder, sexual battery, and arson, venue was transferred to Rankin County. Haynes was tried and found guilty of murder, sexual battery, and first degree arson, and sentenced to consecutive sentences of life for murder, thirty years for sexual battery, and twenty years for first degree arson. Haynes subsequently filed a motion for a new trial, or in the alternative, judgment not withstanding the verdict, which motions were denied.

¶2.	Aggrieved, Haynes appeals to this Court, contending (1) the court erred in changing venue to Rankin County and in denying his motion to quash the venire, which was composed

of only twelve percent African-American jurors in a county with a seventeen percent African-American population; (2) the court erred in failing to suppress Haynes' confession to law enforcement officers after he invoked his right to counsel; and (3) the evidence did not support the judgment.

**FACTS**

¶3.     In the early morning hours of February 9, 2004, a newspaper delivery woman reported a house on fire on South Huntington Street in Kosciusko, Mississippi.  Kosciusko Police Officer Carl Black and Kosciusko Firefighter Mark Hill, were some of the first responders to arrive at the house.  Officer Black testified smoke was originating from the rear of the house, and that he noticed window screens located on the back of the home had been removed, as well as a broken window pane located in the back door.  Officer Black also testified that he found a note in the driveway which read, "[d]o not say anything unless the note tells you.  Shake your head yes when you finish reading this note."  After extinguishing the fire, Hill and other officials discovered the body of fifty-nine-year-old Jeanette Nowell, a paraplegic, lying on her bed.  Even though slash wounds were found on Nowell's neck, the pathologist listed Nowell's primary cause of death as smoke inhalation.

¶4.     Later that morning, Kosciusko Police Officer Matt Steed was eating at a McDonald's restaurant when Haynes, a McDonald's employee, approached him and said that he knew "who killed that lady last night."  Officer Steed testified that Haynes told him that Barry Love was responsible and then Haynes described in detail how Love broke into the house and

2

killed Nowell. Police investigator Curtis Pope testified Haynes repeated the same story to him, and that Haynes subsequently confessed that he, not Love, committed the crime. Physical evidence found at the crime scene, including fingerprints and seminal fluid, corroborated Haynes' confession.

## DISCUSSION

### I. WHETHER THE COURT ERRED IN CHANGING VENUE TO RANKIN COUNTY AND IN DENYING HAYNES' MOTION TO QUASH THE VENIRE.

¶5. Haynes first argues that the trial should not have been transferred to Rankin County, a county where black citizens constitute only seventeen percent of the demographic, as compared to Attala County, whose black citizens make up forty percent of the demographic. Instead, Haynes argues his trial should have been moved to a county with similar racial demographics as Attala County.

¶6. However, "a defendant has no right to a change of venue to a jurisdiction with certain racial demographics." *Mitchell v. State*, 886 So. 2d 704, 709 (Miss. 2004) (citing *De La Beckwith v. State*, 707 So. 2d 547, 597 (Miss. 1997)); *see also* *Simon v. State*, 633 So. 2d 407, 412 (Miss. 1993), *vacated on other grounds*, 513 U.S. 956, 115 S. Ct. 413, 130 L. Ed. 2d 329 (1994), *on remand*, 679 So. 2d 617 (Miss. 1996). Furthermore, "[m]otions for change of venue are left to the trial court's sound discretion." *Swann v. State*, 806 So. 2d 1111, 1116 (Miss. 2002) (citing *Davis v. State*, 767 So. 2d 986, 993 (Miss. 2000); *Hickson v. State*, 707 So. 2d 536, 542 (Miss. 1997)).

3

¶7.     Here, the circuit judge moved the trial to Rankin County, after considering factors such as where Haynes could obtain a fair and impartial trial, away from pretrial publicity. The circuit judge also considered courthouse facilities, proximity from the transferor county, and the location of witnesses. Based on *Mitchell* and the trial judge's findings, we find no abuse of discretion.

¶8.     Haynes also argues that the circuit judge improperly denied his motion to quash the venire which was only twelve percent black, when Rankin County's demographic is seventeen percent black. In order to show a violation of the right to an impartial jury representing a fair cross-section of the community, a defendant must show "(1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Gray v. State*, 887 So. 2d 158, 165 (Miss. 2004) (citing *Lanier v. State*, 533 So. 2d 473, 477 (Miss. 1988)).

¶9.     Here, the venire from which the jury was selected was produced by a computer which randomly selected names from the voter rolls of Rankin County. Haynes made no objection to the selection process, nor did he present any evidence indicating systematic exclusion of blacks in the jury-selection process. As the circuit judge noted, Haynes objected only to the results of the selection process, not the manner in which the jury was drawn. Because

4

Haynes has failed to make a showing of any of the prima facie elements, this Court finds this argument is without merit.

## II. WHETHER THE COURT ERRED WHEN IT FAILED TO SUPPRESS HAYNES' MARCH 3, 2004, CONFESSION WHICH WAS MADE AFTER HAYNES INVOKED HIS RIGHT TO COUNSEL.

### A. Confession

¶10. On February 9, 2004, Haynes was arrested for Nowell's murder. During Officer Pope's first meeting with Haynes, Officer Pope first advised Haynes of his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). At this time Haynes did not request an attorney. Officer Pope met with Haynes a second time, and again advised Haynes of his Miranda rights. However, this time, Haynes requested counsel, and Officer Pope subsequently stopped the interview. About one week later, Haynes received counsel. On March 3, 2004, Officer Pope received a phone call from the jail informing Officer Pope that Haynes had asked to speak with him.

¶11. Thereafter, Officer Pope and Detective Blakely went to the jail and met with Haynes, re-advised Haynes of his rights, and had Haynes sign a waiver form. Haynes did not say he wanted to talk about his case, but instead asked Officer Pope several questions about his bond, scheduling, and a preliminary hearing. Although Officer Pope's testimony is unclear as to the sequence of the remaining conversation's topics, the record provides a general description about the details of the conversation. At some point Officer Pope asked Haynes

if anything else was bothering him, to which Haynes shook his head, and then began talking about problems at the jail.

¶12.   Following this discussion, Officer Pope asked Haynes "if he wanted to tell us anything about the situation." Again, Haynes shrugged his shoulders. On cross-examination during a pretrial motion, defense counsel asked Officer Pope what he meant by "situation." Officer Pope replied "[w]ell, the whole situation. We probably were talking about the charges." However, Officer Pope went on to say "I don't think I would, I ever directly brought up the address or anything like that."

¶13.   Officer Pope then asked Haynes if he previously had told the truth, to which Haynes shrugged his shoulders again. At some point Haynes discussed his vocational activities, his instructor, and fishing, although the record is not clear as to when this discussion took place. Officer Pope then stated Haynes was told that it was obvious he had something bothering him. Officer Pope stated he and Detective Blakely continued talking with him. Officer Pope testified Haynes eventually put his head down, took a deep breath, raised his head, and said "I'm ready to do my time and be a man." Officer Pope stated Haynes confessed that he attempted to kill Nowell and set fire to her home, but never admitted having intercourse with her.

¶14.   After the confession, Officer Pope stated he and Detective Blakely asked Haynes if he would write down or allow a videotaping of his statement. Officer Pope testified Haynes told him no, because Haynes' attorney did not want him to give any statements. Thereafter,

6

Officer Pope asked Haynes if he would like to speak with his attorney, to which Haynes responded affirmatively. After being contacted, Haynes' attorney went to the jail and after talking with Haynes, told Officer Pope that he could not advise his client to give a statement at that time.

¶15. Haynes claims his confession was the result of police interrogation, and therefore was inadmissible as a violation of *Edwards v. Arizona*, 451 U.S. 477, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981). Whether a confession is admissible is a fact-finding function for the trial court, and its decision will not be overturned unless the trial court applied an incorrect legal standard, committed manifest error, or made a decision against the overwhelming weight of the evidence. *Thorson v. State*, 895 So. 2d 85, 115 (Miss. 2004); *Payton v. State*, 897 So. 2d 921, 935 (Miss. 2003); *Swinney v. State*, 829 So. 2d 1225, 1235 (Miss. 2002).

¶16. In *Edwards*, the United States Supreme Court held "that an accused . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." 451 U.S. at 484-45; *see also Minnick v. Mississippi*, 498 U.S. 146, 156, 111 S. Ct. 486, 112 L. Ed. 2d 489 (1990); *Kirkland v. State*, 559 So. 2d 1046, 1047 (Miss. 1990).

¶17. In other words, once an accused has invoked his right to counsel, any statements given by the defendant in response to further police questioning are admissible only where (1) the defendant initiated further discussions with the police and (2) knowingly and intelligently

7

waived the rights he had invoked. *Smith v. Illinois*, 469 U.S. 91, 95, 105 S. Ct. 490, 83 L. Ed. 2d 488 (1984).

¶18.   At first glance, it would appear that any type of conversation initiated by a defendant would fall under the *Edwards* exception. However, in *Oregon v. Bradshaw*, 462 U.S. 1039, 1045, 103 S. Ct. 2830, 77 L. Ed. 2d 405 (1983) (plurality opinion), the United States Supreme Court held otherwise:

> While we doubt that it would be desirable to build a superstructure of legal refinements around the word "initiate" in this context, there are undoubtedly situations where a bare inquiry by either a defendant or by a police officer should not be held to "initiate" any conversation or dialogue. There are some inquiries, such as a request for a drink of water or a request to use a telephone that are so routine that they cannot be fairly said to represent a desire on the part of an accused to open up a more generalized discussion relating directly or indirectly to the investigation. Such inquiries or statements by either an accused or a police officer, relating to routine incidents of the custodial relationship, will not generally "initiate" a conversation in the sense in which that word was used in *Edwards*.

Stated differently, the Supreme Court's use of the term "initiate" involves more than the inquiry of simply "who talks first." *See Sattayarak v. State*, 887 P.2d 1326, 1329 (Okla. Crim. App. 1994).

¶19.   In *Bradshaw*, the Supreme Court held that the defendant's ambiguous statement, "[w]ell, what is going to happen to me now?" expressed a desire to open up a generalized discussion about the investigation. 462 U.S. at 1045-46 (plurality opinion); *Id*. at 1050 (Powell, J., concurring) ("[T]he facts and circumstances, when viewed in their entirety, clearly establish a valid waiver of the right to counsel). In the case at bar, after invoking the

right to counsel, Haynes admits to initiating conversation as to his bond and other matters, but argues he did not initiate a conversation as to the charges he was facing.

¶20.     For this Court, this case is of first impression with regard to what constitutes "initiation" as to a conversation relating directly or indirectly to the investigation and conversation relating to routine incidents of the custodial relationship.

¶21.     Although this Court is not bound by case law from other states, we look to *Kraft v. State*, 713 S.W.2d 168 (Tex. App. Houston 1st Dist. 1986) (affirmed on appeal for separate reason), which provides guidance as to how other courts have construed inquiries "relating to routine incidents of the custodial relationship." In *Kraft*, the defendant was arrested for driving while intoxicated. *Id*. at 169. Kraft was informed of his *Miranda* rights and thereafter stated he wanted to call his lawyer. *Id*. While Kraft was on the phone, an officer told the defendant that his attorney could not come down to the police station. *Id*. After hanging up, Kraft asked the officer whether the advice he received over the phone was correct; specifically, whether a bondsman could get him out of jail. *Id*. at 169-70, 172. The officer told Kraft he would be able to call a bondsman, and then the officer recommended questioning. *Id*. at 169-70.

¶22.     Although a Texas trial court held the defendant's question reinitiated conversation with the officer, the Texas Court of Appeals held otherwise: "[i]nquiries about *bail* are the type of necessary inquiries arising out of the incidents of the custodial relationship, distinguished in *Edwards* from conversations evincing a desire to open up more generalized

discussion relating to the investigation." *Id*. at 172 (emphasis added).[1]  The court went on to find that the State failed to show a knowing and intelligent waiver of Kraft's Fifth Amendment right to have counsel present during interrogation because the police officer repeatedly told the defendant that his attorney could not come to the police station during the interview.  *Id*.

¶23.  In this case, Haynes asked to speak to Officer Pope regarding what he terms "procedural matters," including bond, scheduling, and a preliminary hearing.  Following Texas' lead in *Kraft*, we find those inquiries are matters "relating to routine incidents of the custodial relationship" as discussed in *Bradshaw*.  Therefore, Haynes' questions did not "initiate" a conversation as the word was used in *Edwards*.

¶24.  Moreover, at no point in Officer Pope's testimony did he say Haynes asked other questions which "evinced a willingness and a desire for a generalized discussion about the investigation." *See Bradshaw*, 462 U.S. at 1046; *United States v. Velasquez*, 885 F.2d 1076, 1085 (3d Cir. 1989); *see also United States v. Whaley*, 13 F.3d 963 (6th Cir. 1994) ("[A]n *Edwards* initiation occurs when, without influence by the authorities, the suspect shows a willingness and a desire to talk generally about his case.")  In *Smith*, 469 U.S. at 98, the Supreme Court stated:

---

[1]Defendants' inquiries regarding requests to use the telephone, get a drink of water, to contact his mother, whether the defendant would be held overnight, and what charges were being asserted against the defendant have all been held to arise out of incidents of the custodial relationship. *Bradshaw*, 462 U.S. at 1045; *Potts v. Commonwealth*, 546 S.E.2d 229, 234 (Va. Ct. App. 2001); *United States v. Lynch*, 813 F. Supp. 911, 913 n.4 (D.N.H. 1993); *State v. Barmon*, 679 P.2d 888, 893 (Or. Ct. App. 1984).

> *Edwards* set forth a "bright-line rule" that *all* questioning must cease after an accused requests counsel. In the absence of such a bright-line prohibition, the authorities through "badger[ing]" or "overreaching" - explicit or subtle, deliberate or unintentional - might otherwise wear down the accused and persuade him to incriminate himself notwithstanding his earlier request for counsel's assistance.

(Citations omitted). In this case, it was only after Officer Pope and Detective Blakely's questions, specifically, "if he wanted to tell us anything about the situation," whether Haynes had told the truth, and what was bothering him, that Haynes gave his confession. Therefore, Officer Pope and Detective Blakely's questions constituted interrogation after Haynes invoked his right to counsel, and those questions were in violation of *Edwards*.

¶25. However, the State argues that because Haynes received his *Miranda* rights and signed a waiver of those rights before the conversation took place between Haynes and the two officers, the trial court was correct in allowing Haynes' confession into evidence. Moreover, the State argues, neither Officer Pope nor Detective Blakely used any threats, promises, or coercion to obtain Haynes' confession.

¶26. Essentially, the State is asking this Court to skip the first step of the *Edwards* analysis, which requires this Court to determine whether the defendant initiated further discussions with the police, and focus only on the second step, which requires this Court to determine whether the defendant knowingly and intelligently waived the rights he had invoked. We find this argument is without merit. *See United States v. Cannon*, 981 F.2d 785, 789 (5th Cir. 1993) ("Determining who initiated the conversation after [defendant] invoked his right to counsel is essential to a Fifth Amendment inquiry.") (citing *Bradford v. Whitley*, 953 F.3d

11

1008, 1010 (5th Cir. 1992)). Even if Haynes knowingly, intelligently, and voluntarily waived his right, the waiver does not cure a violation of *Edwards*. *See United States v. Webb*, 755 F.2d 382, 390 (5th Cir. 1985) (citing *Solem v. Stumes*, 465 U.S. 638, 104 S. Ct. 1338, 79 L. Ed. 2d 579 (1984)).

¶27.    A case dealing with both defendant initiation and waiver of rights is *Sattayarak*, 887 P.2d at 1329.  There, Sattayarak invoked her right to counsel during custodial interrogation. *Id*.  The next morning, she was handcuffed and placed in a car with a police officer.  *Id*.  As the car began to drive off, she asked the officer where they were going.  *Id*.  In response, the officer told her their destination and then asked if she had made any statements to other officers.  *Id*.  Before she could answer, the officer read Sattayarak her *Miranda* rights.  *Id*. The officer went on to ask her if she would answer his questions and give a statement.  *Id*. The Oklahoma criminal appeals court not only held Sattayarak's question "could not be construed as an invitation to discuss any aspect of the investigation," but also held the waiver "was the result of police-initiated questioning and [was] not valid." *Id*. at 1329-30.  As such, the court held it was error to admit Sattayarak's statements given after the officer initiated the conversation.  *Id*. at 1330.

¶28.    In this case, although Officer Pope had Haynes sign a waiver of his *Miranda* rights before any conversation took place, just as in *Sattayarak*, it was the officers who initiated discussion relating to the investigation when Officer Pope asked Haynes "if he wanted to tell us anything about the situation," whether he had told the truth, and what was bothering him.

¶29.    Furthermore, to accept the State's argument that Haynes waived his right to counsel would invalidate the "initiation" distinction set forth in **Bradshaw**.  Adopting the State's position would allow an officer to question a defendant subsequent to the invocation of counsel, where the defendant asked a question that is custodial in nature.

¶30.    Because the trial judge allowed Haynes' confession into evidence based on the judge's finding that Haynes' "initiated" contact with Pope in the sense that Haynes was essentially the "first to speak," we find the trial judge erred by applying an incorrect legal standard.  As case law shows, an initiation by a defendant regarding inquiries relating to the custodial relationship does not constitute an "initiation" within the meaning of **Edwards**.  As such, Officer Pope and Detective Blakely violated Haynes' Fifth Amendment right under **Edwards** when the officers began questioning Haynes about the investigation.  Haynes had previously invoked his right to counsel and reinitiated conversation with Pope only as to matters of bond, scheduling, and preliminary hearing.  Therefore, we find the circuit judge erred in admitting the confession into evidence.

### B. Harmless Error

¶31.    We must now determine whether the admission of the confession constituted harmless error, thus allowing the verdict to stand.  "The admission of confessions obtained in violation of **Edwards** and its progeny constitutes trial error, and is therefore amenable to harmless error analysis."  **Goodwin v. Johnson**, 132 F.3d 162, 181 (5th Cir. 1988); **United States v. Webb**, 755 F.2d 382, 392 (5th Cir. 1985).  In order for a violation of a constitutional right to be held

13

harmless, this Court must determine that the violation was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 23, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). Similarly, this Court has held "errors involving a violation of an accused's constitutional rights may be deemed harmless beyond a reasonable doubt where the weight of the evidence against the accused is overwhelming." *Clark v. State*, 891 So. 2d 136, 142 (Miss. 2004) (citing *Riddley v. State*, 777 So. 2d 31, 35 (Miss. 2000)).

¶32.	Here, without Haynes' confession, the State submitted only circumstantial evidence establishing that Haynes' actually set the fire which led to Nowell's death. Although DNA of the semen found on Nowell's body matched Haynes' DNA indicating sexual battery, the State presented little concrete evidence actually showing Haynes was responsible for setting the fire. Only a small burn on Haynes' jacket as well as the odor of smoke linked him to the fire. Without Haynes' confession, the jury may have given different weight to the State's evidence, and possibly in Haynes' favor. *See Palm v. State*, 748 So. 2d 135, 142 (Miss. 1999) ("While some statements by a defendant may concern isolated aspects of the crime or may be incriminating only when linked to other evidence, a full confession in which the defendant discloses the motive for and means of the crime may tempt the jury to rely upon that evidence alone in reaching its decision.") (citing *Arizona v. Fulminante*, 499 U.S. 279, 296, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991)).

¶33.	Moreover, Haynes' argument that Love may have played a role in the crime also constitutes a shift in the trial's dynamic. Haynes argued during trial that police did not fully

14

investigate Love as a suspect in the crime, although Haynes originally told police Love perpetrated the crime. Haynes also argued that police did not request Love's clothes to check for ignitable fluids in order to show Love might have caused the fire, nor did they check Love's shoes to determine whether they matched a shoe print found at Nowell's home. Furthermore, without Haynes' confession, the jury might have questioned Love's credibility. Haynes pointed out Love's inconsistent stories as to how Love came into possession of Nowell's gun. Even though Love's mother testified Love was at her house the night of the murder, when confronted, Love originally denied knowing about the gun. Love later changed his story stating Haynes sold him the gun.

¶34. However, the evidence against Haynes, disregarding his confession, is overwhelming and links him to the scene of the crime. The evidence includes Haynes' DNA found at the crime scene; Haynes' fingerprints found on a note outside Nowell's home; a burnt spot on Haynes' jacket, as well as the odor of smoke; Haynes' knowledge of the crime as told to Officer Steed and Officer Pope, alleging Love was responsible for the crime; that Haynes' grandmother served as Nowell's caretaker; bullets taken from Nowell's home were found in the floorboard of the car belonging to Haynes' grandmother; a piece of cloth found at Nowell's home was similar to a piece found in the car; Haynes had possession of his grandmother's car keys the night of the crime; and Love's testimony that Haynes sold him a gun that was registered in Nowell's name and was taken from her home. Based on this

large amount of evidence establishing Haynes' culpability, we find the circuit judge's admission of Haynes' confession was harmless beyond a reasonable doubt.

¶35. Finally, although this Court held in *Balfour v. State*, 580 So. 2d 1203, 1209 (Miss. 1991), that the admission of a defendant's full confession did not constitute harmless error where the confession was obtained in violation of *Edwards* and no other confessions were presented into evidence, we find *Balfour* is distinguishable from this case. In *Balfour*, this Court found the defendant's Fifth and Fourteenth Amendment rights were violated when the officers reinitiated interrogation after the defendant had invoked her right to counsel. *Id*. Here, however, Haynes initiated the meeting with Officer Pope and Detective Blakely in which Haynes subsequently gave a confession.

¶36. Because we find the admission of Haynes' confession constituted harmless error beyond a reasonable doubt, we find no reversible error.

### III. WHETHER THE TRIAL COURT'S JUDGMENT IS SUPPORTED BY THE EVIDENCE.

¶37. Haynes argues the evidence presented at trial is insufficient as a matter of law to warrant a conviction on the three counts of the indictment. Additionally, Haynes argues the weight of the State's evidence was not sufficient for a reasonable juror to find him guilty.

¶38. When determining whether the evidence is sufficient to sustain a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bush v. State*, 895 So. 2d 836, 843 (Miss. 2005) (citing

16

***Jackson v. Virginia***, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). Excluding Haynes' confession, and considering only the evidence the State presented in the light most favorable to the State, we find sufficient evidence existed to convict Haynes of murder, sexual battery, and first degree arson. As discussed in our harmless error analysis above, Haynes' DNA and fingerprints were found at the crime scene, Haynes had detailed knowledge of the crime as related to Officer Steed and Officer Pope, alleging Love was responsible for the crime, as well as other factors connecting Haynes to the crime.

¶39. When determining whether a verdict is against the weight of the evidence, this Court weighs the evidence in the light most favorable to verdict. ***Bush***, 895 So. 2d at 844. Moreover, "the verdict must be 'so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.'" ***Dilworth v. State***, 909 So. 2d 731, 737 (Miss. 2005) (citing ***Bush***, 895 So. 2d at 844). Again, excluding Haynes' confession, Haynes provided little, if any, evidence or explanation to refute the State's evidence that connected him to the crime scene. Therefore, we cannot say the verdict was contrary to the overwhelming weight of the evidence so as to create an unconscionable injustice. *See **id***.

## CONCLUSION

¶40. Although we find the circuit judge erred when he admitted Haynes' confession into evidence, we find the admission of Haynes' confession constituted harmless error beyond a reasonable doubt. We do so based on the State's overwhelming evidence presented against

17

Haynes.  We also find the evidence sufficient to sustain the jury's verdict.  Finally, we hold

that the jury's verdict is consistent with the weight of the evidence presented by the State.

Therefore, we affirm the circuit court's judgment.

¶41.   **COUNT I: CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.  COUNT III: CONVICTION OF ARSON (FIRST DEGREE) AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.  THE SENTENCE IMPOSED IN COUNT II SHALL RUN CONSECUTIVE TO THE SENTENCE IMPOSED IN COUNT I.   THE SENTENCE IMPOSED IN COUNT III SHALL RUN CONSECUTIVE TO THE SENTENCES IMPOSED IN COUNT I AND COUNT II.**

**EASLEY AND CARLSON, JJ., CONCUR.  RANDOLPH, J., CONCURS IN RESULT ONLY.  DICKINSON, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER AND COBB, P.JJ., AND GRAVES, J.  DIAZ, J., NOT PARTICIPATING.**

**DICKINSON, JUSTICE, DISSENTING:**

¶42.   I agree with Parts I and III of the plurality opinion, but because I am unable to agree

with Part II, I respectfully dissent.

¶43.   The plurality agrees that Haynes' constitutional rights were violated, but declares the

violation harmless.  In my view, the harmless error analysis employed by this Court in this

case, and in other recent cases, is flawed.  We have departed from guidelines set forth by the

United States Supreme Court, instead employing our own tests for determining harmless

error.  Our analysis has all but eviscerated harmless error analysis, turning it into a review

18

of the weight and sufficiency of the evidence, rather than an independent review of whether the unconstitutionally admitted evidence contributed to the conviction.

¶44.    All fifty states and the federal system permit harmless error analysis in order to save convictions from reversal based on errors which do not affect the substantial rights of the parties. *Chapman v. California*, 386 U.S. 18, 22, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). Harmless errors are only those "which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." *Id.* In conducting harmless error analysis, this Court has the power and duty to review the record de novo in order to determine the error's effect. *Arizona v. Fulminante*, 499 U.S. 279, 295, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991). Harmless error may apply to cases where an accused's constitutional rights were violated. *Chapman*, 386 U.S. at 22. This includes involuntary or coerced confessions, *Fulminante*, 499 U.S. at 308, and violations of *Edwards v. Arizona*, 451 U.S. 477, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981), and its progeny. *See Goodwin v. Johnson*, 132 F.3d 162, 181 (5th Cir. 1997).

¶45.    The violation of a constitutional right may not be deemed harmless unless certain guidelines are followed, as set forth by the United States Supreme Court. The current version of harmless error analysis was announced by the United States Supreme Court in *Chapman* but traces its origins back to *Payne v. Arkansas*, 356 U.S. 560, 78 S. Ct. 844, 2 L. Ed. 2d 975 (1958), and *Fahy v. Connecticut*, 375 U.S. 85, 84 S. Ct. 229, 11 L. Ed. 2d 171 (1963). In

19

*Chapman*, the Court held that, before a federal constitutional error can be held harmless, the Court must be able to declare a belief that it was *harmless beyond a reasonable doubt*. 386 U.S. at 24. Accordingly, the Court placed the burden on the beneficiary of the error to prove there was no injury; otherwise reversal of the erroneously obtained judgment is required. *Id.*

¶46. The phrase "harmless beyond a reasonable doubt" has now become synonymous with harmless error analysis, but this Court's current usage of that phrase has set it loose from its original moorings. The *Chapman* Court found little difference between the phrase "harmless beyond a reasonable doubt" and the Court's holding in *Fahy*. *Id.* In *Fahy* the Court held:

> We are not concerned here with whether there was sufficient evidence on which the petitioner could have been convicted without the evidence complained of. *The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.*

*Fahy*, 375 U.S. at 86-87 (emphasis added). While the United States Supreme Court's wording has changed over the years, the basic tenet remains the same – the impact of the erroneously admitted evidence, rather than the properly admitted evidence, should be weighed to determine what errors are harmless. *Fulminante*, 499 U.S. at 296.

¶47. In *Harrington v. California*, 395 U.S. 250, 254, 89 S. Ct. 1726, 23 L. Ed. 2d 284 (1969), the United States Supreme Court held harmless the admission of confessions by non-testifying co-defendants in violation of the defendant's right of confrontation. While the Court discussed the overwhelming evidence of guilt in that case, it did not base its decision on the weight and sufficiency of the untainted and cumulative evidence. *Id.* The Court

20

followed the ***Chapman*** procedure by examining the impact of the improperly admitted confessions on the specific facts of that case:

> Our judgment must be based on our own reading of the record and on what seems to us to have been the *probable impact of the two confessions* on the minds of an average jury. *We admonished in Chapman against giving too much emphasis to 'overwhelming evidence' of guilt*, stating that constitutional errors affecting the substantial rights of the aggrieved party could not be considered to be harmless. By that test we cannot impute reversible weight to the two confessions. *We do not depart from Chapman; nor do we dilute it by inference. We reaffirm it.* We do not suggest that, if evidence bearing on all the ingredients of the crime is tendered, the use of cumulative evidence, though tainted, is harmless error. Our decision is based on the evidence in this record. The case against Harrington was not woven from circumstantial evidence.

***Id.*** (Emphasis added; citations omitted). *See also **Fulminante***, 499 U.S. at 296 (harmless error analysis required the Court to "determine[] whether the State has met its burden of demonstrating that the admission of the confession to Sarivola did not contribute to Fulminante's conviction.").

¶48. While it is unclear at what point this Court's analysis changed direction, the resulting impact is profound. Our contemporary approach, as recently announced in ***Clark v. State***, 891 So. 2d 136, 142 (Miss. 2004), holds that "errors involving a violation of an accused's constitutional rights may be deemed harmless beyond a reasonable doubt where the weight of the evidence against the accused is overwhelming." This level of review deprives this Court of its role in protecting the accused's constitutional rights, leaving the issue squarely in the hands of the trial court, whose decisions we now merely review for the weight and sufficiency of the evidence. ***Chapman*** requires this Court to do more. We are required, in

21

my view, to inquire into the character and quality of the tainted evidence to determine if it reasonably contributed to the conviction. It is simply not enough to say that, had the tainted evidence been excluded, the admissible evidence was strong enough to secure a conviction.

¶49. Turning to the present case, it is beyond question that the police violated Haynes' Fifth and Fourteenth Amendment rights as espoused by *Edwards*. I cannot fathom how the plurality could conclude the tainted evidence could not possibly have contributed to the conviction. The United States Supreme Court has agreed that a defendant's confession is perhaps the most probative and prejudicial evidence that the State can produce at trial. *Fulminante*, 499 U.S. at 296 (finding admission of coerced confession was not harmless error). Sitting as an appellate court, we cannot say the weight and credibility the jury gave to Haynes' confession was inconsequential, especially where the remainder of the State's evidence was circumstantial. *See Harrington*, 395 U.S. at 254; *Payne*, 356 U.S. at 568. And beyond that, we certainly cannot say the unconstitutionally secured confession did not reasonably contribute to Haynes' conviction. Indeed, absent the constitutionally forbidden confession, honest and fair-minded jurors might very well have arrived at not-guilty verdicts. *See Chapman*, 386 U.S. at 25.

¶50. This Court has previously found a similar *Edwards* violation to be reversible and not harmless. *Balfour v. State*, 580 So. 2d 1203, 1209 (Miss. 1991). I disagree with the plurality's conclusion that *Balfour* and the present case are distinguishable. In both cases the police violated the accused's rights in conducting a custodial interrogation following a

request to have counsel present. The fact that Balfour did not reinitiate the discussion with the police while Haynes did is immaterial. In the present case, Haynes' reinitiating dealt only with matters related to bond, scheduling, and his preliminary hearing. When the police questioned Haynes further about general matters related to the charges against him, they clearly violated his Fifth and Fourteenth Amendment rights. These were the same rights the police violated in *Balfour*, and the minor underlying factual distinctions are not enough to distinguish the hard and fast rule.

¶51. Once he invoked his right to counsel, Haynes had a constitutional right not to be questioned without his counsel present, and the violation of that right should not be emasculated by other evidence of guilt. I would reverse the trial court's judgment and remand this case for a new trial which excludes evidence of Haynes' confession. For these reasons, I must respectfully dissent.

**WALLER AND COBB, P.JJ., AND GRAVES, J., JOIN THIS OPINION.**