891 So.2d 136 (2004)
Clifton CLARK a/k/a Clifton Burns Clark, III
v.
STATE of Mississippi.
No. 2003-KA-00946-SCT.
Supreme Court of Mississippi.
October 21, 2004.
Rehearing Denied January 20, 2005.
*137 Anthony J. Buckley, Laurel, attorney for appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, attorneys for appellee.
EN BANC.
SMITH, Chief Justice, for the Court.
¶ 1. Clifton Clark and Michael Barnes were indicted for armed robbery by the grand jury in Forrest County, Mississippi. Clark was tried and convicted of armed robbery pursuant to Miss.Code Ann. § 97-3-79 (Rev.2000). Although the jury found Clark guilty of armed robbery, it was unable to reach a verdict as to his sentence, and the court sentenced Clark to serve 54 years in the custody of the Mississippi Department of Corrections.

FACTS
¶ 2. On September 7, 2002, an armed robbery was committed at an Amoco Food Store in Hattiesburg, Mississippi. Two men entered the Amoco and demanded money from the two clerks. Both men were wearing camouflage shirts, and they tied red rags on their faces for concealment. The significantly taller of the two *138 men was armed with a pistol. After collecting approximately $186 from the clerks, the two men fled the store on foot. The entire incident was captured on video by the store's surveillance system. Clifton Clark and Michael Barnes were arrested and later indicted for armed robbery.
¶ 3. At Clark's trial, the State called several witnesses to testify against Clark. Those witnesses included: the two clerks manning the store at the time of the robbery; two police officers; a patron of the Amoco who was pumping gas at the time of the night of the robbery; Clark's former roommate; Clark's former girlfriend; and his accomplice to the crime  Michael Barnes. With the exception of Michael Barnes, each witness gave testimony of the crime which was recorded by the court.
¶ 4. Barnes refused to testify to anything concerning the Amoco robbery, even after the trial judge ordered him to do so. However, he did give a statement to Detective Sergeant Rusty Keys of the Hattiesburg Police Department regarding the Amoco armed robbery. This statement included a waiver of Barnes's Miranda rights and an account of the activities on the night of the robbery. Barnes's statement implicated Clark as the gunman during the Amoco robbery. This statement was signed by Michael Barnes and Detective Sergeant Rusty Keys. In spite of this statement, Barnes refused to testify against Clark. Detective Keys testified that Barnes confessed to him that he was afraid for his life.
¶ 5. Barnes stated that the reason he gave the statement was that he "was given the impression that [Clark] turned [him] in, and [he] was trying to shoot back at him." In addition, Barnes contends that he asked for an attorney a number of times and Detective Keys coerced him into making a statement.
¶ 6. Since Barnes would not testify, the State claimed that he was an unavailable witness under the rules of evidence and hearsay exception. Therefore, the State called Detective Keys to the stand to read Barnes's statement into evidence. Defense counsel objected to the statement being read into the record because it deprived Clark of the opportunity to cross-examine Barnes. Nevertheless, the court allowed the statement to be read into the record.
¶ 7. Clark testified on his own behalf that he had been at home on the night of the robbery. He stated that Barnes showed up at his house around the time that the ten o'clock news began. He testified that Barnes was "real jittery and nervous and wanted to watch the news." Clark said that he and Barnes watched a news story about the Amoco robbery. While he never directly implicated himself in the robbery, Barnes "kind of hinted around" such that Clark "kind of got the  kind of figured this." Clark specifically denied robbing the store.
¶ 8. Mandy Weathers, Clark's roommate at the time, testified at trial that Clark and Barnes came into her room the night of the Amoco robbery. She also testified that Clark and Barnes switched the television channel to the evening news and admitted to robbing the store with the gun that Clark had given to her a couple of days before. Weathers went further stating that Barnes had threatened her with a handgun for signing a statement against him and on a subsequent occasion offered her money for her silence.
¶ 9. Latosha Fairley, Clark's girlfriend at the time, testified at trial that she had seen the video of the robbery and determined that the gunman's build and mannerisms were those of Clifton Clark. Furthermore, Fairley acknowledged that her suspicions were confirmed when she asked *139 Clark point blank if he had committed the robbery and he answered in the affirmative.

DISCUSSION
¶ 10. Clark raises two issues in this appeal. The first is whether Clark was deprived of his Sixth Amendment right to confront and cross-examine a witness once the Forrest County Circuit Court admitted into evidence, over objection, Barnes's statement after Barnes refused to testify. Additionally, Clark contends that the trial court compounded it error in admitting Barnes's statement by refusing Clark's two requested limiting instructions.
¶ 11. The standard of review this Court uses regarding admission or exclusion of evidence is the abuse of discretion standard. Herring v. Poirrier, 797 So.2d 797, 804 (Miss.2000). "The trial judge is empowered with the discretion to consider and to decide what evidence is admissible, and unless this judicial discretion is so abused as to be prejudicial to the accused, then, the ruling of the lower court must be affirmed." Id.

I. Admission of Barnes's statement
¶ 12. Clark is guaranteed the right to cross-examine Barnes by our federal and state constitutions. U.S. Const. amend. VI; Miss. Const. art. 3, § 26. Since Barnes refused to testify at trial and his statement was nevertheless read into the record by Officer Keys, this Court must determine whether Clark's constitutional right was violated. The United States Supreme Court has recently ruled that "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004).
¶ 13. In Crawford, the State tried the petitioner for assault and the attempted murder of a man who allegedly tried to rape his wife. 541 U.S. at ___, 124 S.Ct. at 1356. At trial the State was allowed to introduce a statement, made by the petitioner's wife to the authorities, over an objection by the petitioner that the statement was in violation of his Sixth Amendment right to confront witnesses against him. Id. at 1357. The statement was evidence contrary to the petitioner's contention that the stabbing was in self-defense. Id. at 1355. The wife of the petitioner did not testify at trial due to the State's marital privilege. Id. Further, the statement was admitted at trial because the statement was deemed reliable in accordance with the United States Supreme Court decision in Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). In Roberts the Supreme Court explained that:
when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.
Id. at 66, 100 S.Ct. at 2539 (footnote omitted).
¶ 14. This year in Crawford the Supreme Court abrogated Roberts by holding:
Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination. We leave for another *140 day any effort to spell out a comprehensive definition of "testimonial." Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations....
In this case, the State admitted Sylvia's [the wife's] testimonial statement against petitioner, despite the fact that he had no opportunity to cross-examine her. That alone is sufficient to make out a violation of the Sixth Amendment. Roberts notwithstanding, we decline to mine the record in search of indicia of reliability. Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation.
Crawford, 541 U.S. at ___, 124 S.Ct. at 1374 (footnote omitted).
¶ 15. In Crawford, the defendant's wife clearly gave a testimonial statement to the police regarding her husband's alleged crime. Subsequently, a tape of her statement was played at trial over objection by defense counsel. Due to the State's martial privilege, there was no prior opportunity for the defense to cross-examine her. The United States Supreme Court reasoned that the testimonial statement given by the wife was barred due to a lack of a prior opportunity for cross-examination regardless of the reliability of the testimonial statement. Id. at 1374.
¶ 16. Similarly, Clark's accomplice, Barnes, unquestionably gave a testimonial statement to Officer Rusty Keys regarding the armed robbery of the Amoco. Although Barnes initially took the stand at trial, he promptly informed the trial court that he would not testify. After deliberation by the trial court, Officer Keys was allowed to read Barnes's statement to the jury in spite of Clark's objection. Consequently, Clark was not afforded an opportunity to cross-examine Barnes. This is the very kind of violation that Crawford seeks to abolish. Therefore, the trial court erred in admitting Barnes' testimonial statement where and Clark lacked an opportunity for cross-examination of Barnes.
¶ 17. In Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the United States Supreme Court considered facts which were similar to those present in the case sub judice. In Bruton, the accomplice, Evans, gave two confessions to authorities regarding the armed robbery he and Bruton committed. Id. at 124, 88 S.Ct. at 1621. One of Evans's statements directly named Bruton as an accomplice to the robbery. Id. Both statements were admitted at trial, but Evans did not take the stand. Id. at 128, 88 S.Ct. at 1623. The United States Supreme Court held that the lack of cross-examination was a violation of the Confrontation Clause of the Sixth Amendment. Id. at 126, 88 S.Ct. at 1622.
¶ 18. Eight years after Bruton was decided, this Court announced the following procedural rule:
[I]n such cases, the prosecution should not offer, and the trial judge should not admit, in evidence, incriminating statements of a co-defendant (implicating the defendant) during the state's case-in-chief, since it could not be known whether the co-defendant would testify after the state rested.
Brown v. State, 340 So.2d 718, 721 (Miss.1976).
¶ 19. Having found that the admission of Barnes's statement was error, we must now consider whether that error is sufficient to require reversal. The United States Supreme Court has explicitly "reject[ed] the notion that a Bruton error can never be harmless. `[A] defendant *141 is entitled to a fair trial but not a perfect one,' for there are no perfect trials." Brown v. United States, 411 U.S. 223, 231-32, 93 S.Ct. 1565, 1570, 36 L.Ed.2d 208 (1973) (emphasis added). That is, the Constitution does not guarantee a perfect trial, but it does entitle a defendant in a criminal case to a fair trial. Delaware v. Van Arsdall, 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986). A Bruton error is harmless "where the testimony erroneously admitted was merely cumulative of other overwhelming and largely uncontroverted evidence properly before the jury." Brown, 411 U.S. at 231, 93 S.Ct. 1565.
¶ 20. In the present case, Clark's accomplice, Barnes, made a confession to Detective Keys. Barnes then refused to testify at trial. The trial court allowed the State to call Keys to the stand so he could read Barnes' confession into the record. The statement was admitted in spite of the fact that the Clark had no opportunity to cross-examine Barnes.
¶ 21. Clark contends that this circumstance constitutes reversible error since Barnes was a principal witness and there was no opportunity to cross-examine him. The State concedes that there was a violation of the Confrontation Clause when the circuit court allowed Barnes's statement to be read into the record by Sergeant Keys. However, the State claims that this error is harmless and does not require reversal. The State contends that Barnes was not a vital witness.
¶ 22. As stated, supra, the evidence presented by the State included the statement Michael Barnes gave regarding the robbery. In his statement, Barnes said that he and Clark were riding around in his car. They were joking around about robbing a house. They then decided to rob a store. He stated that they changed clothes and walked through the woods to the store. They saw a patron pumping gas outside but went in anyway. He stated that it was Clark who held the gun on the cashier and demanded the money. According to Barnes, it was Clark's idea to rob the store.
¶ 23. Moreover, two Amoco employees who were on duty when the robbery occurred testified for the State. Pam Thornton, a cashier, could not positively identify Clark. However, she stated that one of the mens' eyes looked like Michael Barnes's who was a regular customer of the store. Likewise, Theresa Robbins could not identify Clark as one of the robbers.
¶ 24. Dewayne Creighton testified that he saw the robbery from outside the store. He stated that two men entered the Amoco store and one of them, the taller man, began to point a gun at the clerk. He had never seen the men before and could not identify them at trial.
¶ 25. Mandy Weathers, Clark's roommate at the time of the robbery, stated that Clark admitted to her that it was he and Barnes that robbed the Amoco. In addition, Weathers testified that, on a separate occasion after the robbery, Clark offered her money if she would not testify against him.
¶ 26. Likewise, Clark's girlfriend at the time of the robbery, Latosha Fairley, testified that Clark admitted to her that he had committed the Amoco robbery. Fairley viewed the store's surveillance video of the robbery. She recognized Clark's actions, build, and body language; therefore, she identified him even though his face was concealed. The surveillance tape of the robbery, as narrated by Officer Keys during the trial, demonstrates that two men with masks, the same height as Clark and Barnes, were the culprits of the Amoco robbery. In addition, the tape shows the *142 taller of the two men (Clark), as the gunman. The video demonstrated that the gunman was wielding the same kind of gun Clark had taken from Weathers's house. According to Weathers, Clark had given her a pistol for allowing him to live in her house and that pistol was the same type of gun used in the robbery.
¶ 27. However, we find that a Bruton violation has occurred as a result of Clark's inability to cross-examine Barnes. Like the accomplice in Bruton, Barnes gave a statement to the police that incriminated his accomplice and co-defendant. Barnes did not testify at trial, but his statement was nevertheless read to the jury. Therefore, admitting this statement constitutes a Bruton violation. However, after taking into account the wealth of evidence against Clark, particularly the testimony of his roommate and former girlfriend, we conclude that the violation was harmless error.
¶ 28. In addition, a Brown error occurred at trial. Barnes's statement was admitted during the State's case-in-chief. There was no way to know whether Barnes would testify. Barnes subsequently refused to testify. Moreover, the co-defendants' statements did not interlock  Clark did not give a statement to the police. Nevertheless, the two didn't "tell the same story," as evidenced by Clark's specific denial of culpability when he testified on his own behalf. Barnes's statement is rank post-arrest finger pointing, the sort of declaration most in need of in-court confrontation to assure reliability. Nevertheless, even after excluding Barnes's statement, we conclude that the overwhelming evidence opposing Clark demonstrates that this error was harmless.
¶ 29. "This Court has held that even errors involving a violation of an accused's constitutional rights may be deemed harmless beyond a reasonable doubt where the weight of the evidence against the accused is overwhelming." Riddley v. State, 777 So.2d 31, 35 (Miss.2000), citing Kircher v. State, 753 So.2d 1017, 1027 (Miss.1999). Additionally, the United States Supreme Court has concluded that:
[w]e hold that the constitutionality improper denial of a defendant's opportunity to impeach a witness for bias, like other confrontation clause errors, is subject to Chapman harmless-error analysis ... Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.
Van Arsdall, 475 U.S. at 684, 106 S.Ct. at 1438.
¶ 30. The fact that the trial court allowed Barnes's statement to be read into evidence constitutes a plain Sixth Amendment violation, under Crawford. Despite this error, in addition to other damaging evidence there was direct testimony at trial by two witnesses that Clark had confessed to committing the Amoco robbery. Therefore, due to the overwhelming weight of the evidence, we conclude beyond a reasonable doubt that the violation of the Confrontation Clause was harmless error by the trial court.
¶ 31. With respect to the Bruton error, Barnes's statement was not cumulative of other overwhelming evidence against Clark. In fact, Barnes was the only eyewitness who could positively identify Clark as one of the perpetrators. Moreover, this erroneously admitted statement was not *143 uncontroverted. In spite of the fact that Clark testified that he had absolutely nothing to do with the robbery, specifically refuting Barnes's statement, the weight of the evidence in the record against him is so overwhelming that the Bruton error is harmless beyond a reasonable doubt.
¶ 32. Likewise, the Brown error was harmless. The trial court admitted the statement even though there was no way of knowing whether Barnes would testify, which is a plain violation of the Brown rule. In fact, all of Barnes's actions at the trial indicated that he would not testify. It was never established that Barnes's statement was trustworthy. However, given the overwhelming evidence in the record, especially the direct testimony given by Latosha Fairley and Mandy Weathers, is so overwhelming reading Barnes's statement into the record at trial is was harmless error beyond a reasonable doubt.

II. Refusal of limiting instructions
¶ 33. Since the admission of Michael Barnes's statement was harmless error, any error by the trial court in refusing to give the requested limiting instructions regarding that statement was, at most, harmless as well.

CONCLUSION
¶ 34. For the foregoing reasons, we affirm the judgment of the Forrest County Circuit Court.
¶ 35. CONVICTION OF ARMED ROBBERY AND SENTENCE OF FIFTY-FOUR (54) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.
WALLER AND COBB, P.JJ., EASLEY, CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING.