BARNES, J.,
 

 for the Court.
 

 ¶ 1. A Clarke County jury convicted Shawn Michael Singleton of robbery and the capital murder of Elmer “Shubbie” Dobbins. The circuit court judge sentenced Singleton to life imprisonment in the custody of the Mississippi Department of Corrections (MDOC) without eligibility for parole. Singleton now appeals, raising one issue: whether the trial court erred when it allowed the State to refer to the statement of Doris Vann, a co-defendant who passed away before Singleton’s trial. Singleton claims his constitutional right to confront the witness was violated. We find no reversible error and affirm.
 

 STATEMENT OF FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. On the morning of July 27, 2005, Dobbins’s son, Phillip Dobbins, was called by family members to check on Dobbins, as he was missing. At the time, the elder Dobbins, also known as “Shubbie,” was seventy-three years old and fixed lawn mowers in a little shop behind his house in Clarke County, Mississippi, near the Alabama state line. Phillip proceeded to his father’s house early that morning and ultimately found Dobbins’s cold body lying against a back wall in the lawn mower shop. Blood covered the shop’s floor, and several dollar bills were lying near Dobbins’s body. Law enforcement officials described the crime scene in the shop as “very heinous.” Phillip testified that his father usually had about $200 to $300 in his pocket at any given time, but Dobbins’s wallet was never found. Law enforcement secured the crime scene and began their investigation of the murder.
 

 ¶ 3. Later that day, information was obtained that led to three suspects: Singleton, Doris Vann, and Joseph McHenry. At the crime scene, a woman related to law enforcement that she had seen a white Ford Taurus leaving Dobbins’s residence the preceding afternoon of July 26. Another individual related that he had seen a white Taurus that day at his store in Melvin, Alabama, close to the crime scene, and he identified two individuals in the vehicle. A sheriff in Butler, Alabama was then able to surmise the third individual’s identity.
 
 *932
 
 On the afternoon of July 27, Singleton and Vann were stopped in a white Ford Taurus in Gilbertown, Alabama, where they resided, and were taken into custody. Both individuals cooperated with law enforcement, were properly
 
 Mirandized,
 
 and gave statements.
 

 ¶ 4. That day, Singleton gave two statements implicating McHenry as the murderer. The next day, July 28, because of new evidence in the case that caused the interviewers to believe Singleton was being deceptive during the two prior interviews, Singleton was interviewed again. After he waived his rights, Singleton gave a dictated, three-and-one-half-page confession. There, he related in detail the events surrounding Dobbins’s murder. Singleton stated that he and his girlfriend, Vann, violently beat and robbed Dobbins and then went on a drug and alcohol binge with McHenry.
 

 ¶ 5. In his confession, Singleton related that he and Vann went to “Shubbie’s” residence to “borrow” some money. Dobbins gave them twenty dollars, and the couple went to Gilbertown. The couple then returned to Dobbins’s empty residence at approximately noon; Singleton stated he was going to steal some gas from Dobbins, but did not. When Dobbins returned home soon thereafter, Singleton and Vann asked him for some more money, but Dobbins said “no.” They left Dobbins’s residence and picked up “Joey” McHenry. The three individuals went to Bank’s Store and purchased vodka. Next, they went to Melvin’s Store. As they were driving, McHenry and Vann talked about returning to Dobbins’s residence and robbing him. When they arrived back at Dobbins’s house, McHenry stayed in the vehicle, while Singleton and Vann got out. Singleton stated he and Dobbins “got to tussel-ing [sic]” and ended up in the back room of Dobbins’s shop, where Singleton picked up a screwdriver and Vann picked up a hammer. Singleton stated he stabbed Dobbins twice in the abdomen with the screwdriver, and Dobbins fell to the ground; Vann hit Dobbins with the hammer. Singleton then left the shop, but Vann remained for a few more minutes. After the three individuals left the scene, Singleton commented in the vehicle that he did not know if Dobbins was dead or not, but Dobbins dropped to the ground after the second stabbing. Vann, however, offered that “if he ain’t dead then he will be a vegetable because I beat him in the head.” The threesome proceeded to purchase crack cocaine from two different dealers for $140. Vann then decided it would be in their best interest if they disposed of their clothes. First, however, they smoked some crack cocaine in a cemetery near Tokeo Frost Bridge Road. Then, they purchased approximately thirty more dollars’ worth of crack cocaine from yet another drug dealer. After purchasing gasoline, cokes, cigarettes, and vodka at a package store, they purchased an additional twenty dollars’ worth of crack cocaine. Returning to the cemetery, Vann took off her pants, shirt, and shoes and disposed of them in the woods, putting on a long shirt. They then returned to a logging road where McHenry and Vann disposed of trash from the vehicle. Further down the logging road, Singleton changed clothes. Vann disposed of Singleton’s clothes for him. McHenry, Vann, and Singleton then rode around for a while and drank the rest of the vodka. Singleton suggested to Vann that they go and check to see if Dobbins were alive or dead, but Vann rejected the idea.
 

 ¶ 6. A Clarke County grand jury returned a two-count indictment against Singleton, Vann, and McHenry for capital murder and robbery of Dobbins’s checkbook and $200 in cash. Of the three defendants, Singleton was the only one who stood trial — Vann passed away while incar
 
 *933
 
 cerated in September 2006; McHenry accepted a deal with the State where he would testify for the State at Singleton’s trial in exchange for a reduced sentence of five years as an accessory-after-the-fact.
 

 ¶ 7. Singleton’s two-day trial commenced on May 1, 2007. Five witnesses testified for the State. Todd Kemp, Sheriff of Clarke County, testified he was involved with the interviews of both Singleton and Vann on July 27. He stated that Vann was cooperative, was placed in a patrol car, and directed Sheriff Kemp and other law officers on a guided “treasure hunt” of evidence. After being informed of her rights, Vann took them through the trio’s various stops the day of Dobbins’s murder. First, she walked the officers through the crime scene at Dobbins’s shop. Then, they went on a “road trip” where Vann directed them south to a logging road in Wayne County, where shoes, clothing items, and vodka bottles were retrieved. Vann next directed them to a cemetery in Wayne County where female clothing was retrieved. When Sheriff Kemp was asked whether Vann’s guided route matched Singleton’s statement, he responded that it matched “[pjretty much to a T.” Over the objection of the defense, when asked whether Vann’s statement was consistent with Singleton’s statement, Sheriff Kemp said it was.
 

 ¶ 8. J.G. Kufel, a criminal investigator for the Clarke County Sheriffs Department, testified for the State that he collected “mounds” of evidence at the scene and at the “treasure hunt” locations, including: a vodka bottle and women’s shoes splattered in blood at the Wayne County Hunting Club; a pair of women’s jeans on Tokeo Frost Bridge Road; and a blood-splattered hammer. Additionally, a Clover Leaf root beer can was found both at the crime scene and in Singleton’s white Taurus. At the scene, five one-dollar bills were found near Dobbins’s body. Singleton claimed he threw the screwdriver behind the shop; however, it was never found. Blood splatter samples were taken at the scene and also from the Taurus to compare with blood samples from Dobbins. However, it was noted during the defense’s cross-examination that the Mississippi Crime Laboratory had not returned the results of these tests by the time of trial, nor were any fingerprints ever taken.
 

 ¶ 9. Dr. Steven Hayne was accepted as a forensic pathologist expert and testified for the State as to the manner and cause of Dobbins’s death. He stated that there were three non-lethal stab wounds to Dobbins’s chest, consistent with wounds caused by a screwdriver. There were also head wounds apparently inflicted with a blunt object. Wounds on the forearms and hands were consistent with defensive posturing. Dr. Hayne opined that the injuries were. significant, indicative of a struggle with two weapons. Dr. Hayne further testified that Dobbins’s skull was fractured in three locations, and the multiple blows to his head produced bleeding throughout his brain. Dr. Hayne concluded that the cause of death was cranial cerebral trauma secondary to blunt force trauma; in other words, the blows he received to the head were from a blunt object. The superficial stab wounds to Dobbins’s chest did not contribute to his death.
 

 ¶ 10. McHenry also testified for the State. He had known Singleton for approximately twenty years and Vann for one year. His testimony completely corroborated the details of Singleton’s confession and Vann’s “treasure hunt” tour. Additionally, he stated that while Singleton and Vann were robbing and beating Dobbins, he stayed in the backseat of the Taurus, lying down because he was drunk. When Singleton returned to the vehicle, he had blood on his hands and a screwdriver.
 
 *934
 
 Singleton admitted to McHenry that he had stabbed “him” twice. McHenry also noted Singleton had a cut on his hand, and a photograph of Singleton’s hands was admitted into evidence corroborating that his hands had cuts and scratches on them. Finally, McHenry stated that before they went to Dobbins’s residence, Singleton and Vann did not have any money, but after-wards, they did.
 

 ¶ 11. After the State rested, the defense moved for a directed verdict, which was denied. Singleton declined to testify in his own defense, and no other witnesses were called. Jury instructions were accepted, including ones for aiding and abetting, capital murder, and robbery. The jury deliberated approximately thirty minutes and returned a verdict of guilty for capital murder and robbery. The circuit court judge sentenced Singleton to life imprisonment without the eligibility for parole. Singleton filed motions for a new trial and a judgment notwithstanding the verdict (JNOV), which were denied. Singleton now appeals.
 

 STANDARD OF REVIEW
 

 ¶ 12. The standard of review of the trial court’s admission or exclusion of evidence is abuse of discretion.
 
 Clark v. State,
 
 891 So.2d 136, 139(¶11) (Miss.2004). This Court will reverse the trial court only when the error adversely affects a substantial right of a party and the party claiming error raises an objection at trial.
 
 Lynch v. State, 877
 
 So.2d 1254, 1281(¶86) (Miss.2004). “Constitutional issues are reviewed de novo.”
 
 Morris v. State,
 
 963 So.2d 1170, 1175(¶ 15) (Miss.Ct.App.2007).
 

 ANALYSIS OF THE ISSUE
 

 ¶ 13. Singleton asserts that on several occasions at trial, the State elicited testimony from Sheriff
 
 Kemp
 
 that Vann’s statement to law enforcement officials corroborated Singleton’s statement, over the objections of the defense; thus, his Sixth Amendment right to confront adverse witnesses was violated, as Vann had passed away before trial.
 

 ¶ 14. The Confrontation Clause of the Sixth Amendment of the United States Constitution provides that “[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.... ” U.S. Const, amend. VI. Article 3, Section 26 of the Mississippi Constitution of 1890 provides the same protection. The United States Supreme Court has held that “out-of-court statements by witnesses that are testimonial in nature are not allowed under the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness.”
 
 Foley v. State,
 
 914 So.2d 677, 685(¶11) (Miss.2005) (citing
 
 Crawford v. Washington,
 
 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)). Statements of a “testimonial nature” have been held to include police interrogations.
 
 Id.
 
 (citing
 
 Crawford,
 
 541 U.S. at 68,124 S.Ct. 1354).
 

 ¶ 15. In the instant case, testimony at trial showed law enforcement officials interviewed Vann twice, and she provided the same information in both interviews. However, as the defense concedes, Vann’s statements were never entered into evidence, either in whole or in part. Instead, the information in her statements was compared to Singleton’s statement that was admitted into evidence. As the defense points out, there were three instances at trial where this occurred — all during Sheriff Kemp’s examination by the prosecution. During Sheriff Kemp’s direct examination, the following colloquy occurred:
 

 Q. [W]hen you and Sheriff Lolley [of Choctaw County, Alabama] and Doris Vann went ... to the crime scene and then took your trip where
 
 *935
 
 she was directing you to go to this place and go to that place and the items were found, how did that ... route compare to the route that’s described in Mr. Singleton’s statement?
 

 A. Pretty much to a T.
 

 Q. Okay. And as a whole, the statement that Doris Vann gave and the statement that Mr. Singleton gave ... did they appear consistent to you?
 

 [Defense counsel then objected, stating there was a confrontation problem, but the circuit court judge overruled it.]
 

 A. Yes, sir, it was.
 

 Soon after, the following exchange took place, also during the prosecution’s direct examination of Sheriff Kemp, with defense counsel (Mr. Stephenson) objecting:
 

 Q. When you went back to interview [Singleton] on the 28th; what, if anything, did you tell him about what would have made him give this statement?
 

 A. I told him that I had spoken with Doris Vann and she had told me what we believed—
 

 By Mr. Stephenson: Judge—
 

 A. —at that point to be the truth.
 

 By Mr. Stephenson: — I object to — I know what he’s getting at here; but ... once again, he’s getting into what Doris Vann said. And ... they’re going to argue that ... it’s consistent ... and it’s confrontation and hearsay.
 

 [[Image here]]
 

 By the Court: Well, the objection is overruled. I think he can tell about what was different from prior statements, and he confronted him with a new statement from the alleged code-fendant. Is that what happened?
 

 A. Yes, sir, that’s correct, Judge.
 

 Finally, on redirect examination by the prosecution of Sheriff Kemp, the following testimony was elicited:
 

 Q. Now, is there anything in Mr. Singleton’s statement that you feel like you need some physical evidence other than what you’ve already testified to in order to show in your mind that he’s guilty?
 

 A. The statement that we received from Mr. Singleton was corroborated by the statement we received from Doris Vann.
 

 We note that Vann’s statements were not used to shift the blame to Singleton, but to corroborate his own statement.
 

 ¶ 16. Singleton cites
 
 Clark
 
 as being almost directly on point in support of his argument. In
 
 Clark,
 
 the defendant’s accomplice gave a testimonial statement to law enforcement officers but refused to testify at trial; therefore, the trial court allowed the statement to be read into the record over the defense’s objection.
 
 Clark,
 
 891 So.2d at 138 (¶¶4, 6). The Mississippi Supreme Court held that since Clark was not afforded the opportunity to cross-examine this adverse witness, his right to confront the witness was violated pursuant to
 
 Crawford.
 

 [1]
 

 Id.
 
 at 140(¶ 16). In the instant case, we find that corroborating Singleton’s statement through Vann’s out-of-court statement was a violation of Singleton’s constitutional right to confront Vann. However, we find no violation of
 
 Crawford
 
 in the comparisons of Vann’s road trip with law enforcement authorities with Singleton’s statement. Nor
 
 *936
 
 does Singleton raise this as error on appeal.
 

 ¶ 17. The State makes no attempt to argue that this situation was not a violation of Singleton’s constitutional right to confront the witness, but argues it was harmless error. Under the facts and circumstances of this case, we agree. As the State points out, the Mississippi Supreme Court has held that a violation of the Confrontation Clause can be subject to harmless-error analysis.
 
 See Clark,
 
 891 So.2d at 142(¶ 29);
 
 Earl v. State,
 
 672 So.2d 1240, 1243 (Miss.1996) (citing
 
 Delaware v. Van Arsdall,
 
 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)). Violation of a constitutional right is deemed harmless when the reviewing court determines that the violation was harmless beyond a reasonable doubt.
 
 Haynes v. State,
 
 934 So.2d 983, 991(¶ 31) (Miss.2006) (citing
 
 Chapman v. California,
 
 386 U.S. 18, 23, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (overruled on other grounds)). The Mississippi Supreme Court has held that “errors involving a violation of an accused’s constitutional rights may be deemed harmless beyond a reasonable doubt where the weight of the evidence against the accused is overwhelming.”
 
 Clark,
 
 891 So.2d at 142(¶ 29) (citing
 
 Riddley v. State, 111
 
 So.2d 31, 35(¶ 12) (Miss.2000)). Additionally, the
 
 Clark
 
 court explains:
 

 the constitutionality improper denial of a defendant’s opportunity to impeach a witness for bias, like other confrontation clause errors, is subject to
 
 Chapman
 
 harmless-error analysis ... Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witnesses] testimony in the prosecution’s case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution’s case.
 

 Clark,
 
 891 So.2d at 142(¶ 29) (quoting
 
 Van Arsdall,
 
 475 U.S. at 684, 106 S.Ct. 1431).
 

 ¶ 18. In the instant case, there is overwhelming evidence of Singleton’s guilt. Most importantly, Singleton’s own statement confessing to robbing Dobbins and stabbing him in the abdomen with a screwdriver was entered into evidence. While the wounds Singleton admitted to inflicting on Dobbins were not fatal, aiding and abetting Vann in her crimes is sufficient to convict him of capital murder and robbery if the jury found his guilt beyond a reasonable doubt. Other evidence of guilt includes Officer Kufel’s and Sheriff Kemp’s recounting of the “treasure hunt” with Vann, where they traveled to various areas and retrieved evidence that corroborated Singleton’s statement to a “T.” McHenry’s testimony also corroborated Singleton’s statement. Further, McHenry testified that Singleton entered the vehicle after robbing Dobbins with bloody, wounded hands and a screwdriver. McHenry stated that Singleton admitted he stabbed “him” twice. Additionally, McHenry stated that Vann and Singleton suddenly had cash. Witnesses at the scene spotted a white Ford Taurus at both Dobbins’s residence and at a store Singleton stated the trio visited. Dr. Hayne’s opinion on the manner of Dobbins’s death was consistent with Singleton’s statement as well. Finally, at trial, the defense did not put a single witness on the stand to dispute the evidence of guilt.
 

 ¶ 19. We conclude that Sheriff Kemp’s testimony regarding Vann’s statements was not instrumental in establishing Singleton’s guilt, but merely cumulative of other overwhelming and uncontroverted
 
 *937
 
 evidence before the jury. Therefore, the overwhelming weight of the evidence against Singleton allows this Court to conclude, beyond a reasonable doubt, that the violation of the Confrontation Clause, regarding allusions to Vann’s statement, was harmless error.
 

 CONCLUSION
 

 ¶ 20. While the circuit court erred in allowing references to Vann’s statement to law enforcement to corroborate Singleton’s statement, we find that the violation of Singleton’s constitutional right to confront the witness harmless, as the weight of the evidence against Singleton was overwhelming. Accordingly, we affirm Singleton’s convictions and sentence.
 

 ¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF CLARKE COUNTY OF CONVICTION OF COUNT I, CAPITAL MURDER, AND COUNT II, ROBBERY, AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO CLARKE COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, ISHEE AND CARLTON, JJ., CONCUR. ROBERTS, J., NOT PARTICIPATING.
 

 [1]
 

 . However, the
 
 Clark
 
 court found the error harmless, as we will discuss.
 
 Clark,
 
 891 So.2d at 143(¶ 32).