ROBERTS, J.,
for the Court:
¶ 1. A jury in the Adams County Circuit Court found Adrian Williams guilty of the murder of Quinton Brown. Williams was sentenced to life imprisonment in the custody of the Mississippi Department of Corrections (MDOC). Williams filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. The circuit court denied these motions. Williams timely filed this appeal and asks this Court to determine whether the circuit court erred in failing to grant his motion for a new trial and whether his statement to law enforcement, officers about the location of the weapons was inadmissible. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. On May 28, 2011, the body of Brown was discovered slumped over a curb of the road near the Natchez City Cemetery. The Natchez Police Department discovered a .380 pistol and a live nine-millimeter bullet near Brown’s body. Upon identifying Brown’s body, the police department began questioning his friends and family, including Williams. Williams gave a statement on May 28, 2011. In this statement, he said that he, Denzel Fort, and Keldrick Washington had been riding around town when Brown asked Williams for a ride. Williams said they dropped Brown off, and he had nothing to do with Brown’s murder.
¶ 3. Two days later, Williams provided another written statement. In this second statement, he claimed that he, Brown, and Fort drove to the cemetery to physically resolve an ongoing disagreement between Fort and Brown, but before the fight started, Brown pulled a pistol and shot one round. Williams said he reacted by shooting Brown once in self-defense. Fort grabbed the gun from Williams and shot Brown several more times. Shortly thereafter, Williams recanted this version and provided yet another written statement. In this third statement, Williams confessed he shot Brown six times, and he threw the two .357 magnum handguns he used in the Mississippi River.
¶ 4. After his last statement, Williams was placed in a holding cell in the booking area. Williams asked a booking officer if he could smoke a cigarette, and the officer informed him that he would not be able to smoke until he told officers where the guns were located. Approximately an hour later, Williams asked to speak with the booking officer. Williams told the booking officer and Investigator Jerry Ford that two .357 magnums and a .380 pistol were located in an abandoned house next to his mother’s house. Officers were able to locate the guns where Williams said they would be located. After officers found the guns, Williams was given a cigarette.
¶ 5. On March 28, 2012, an Adams County grand jury indicted Williams for the murder of Brown. Williams filed a motion to dismiss the indictment or suppress statements on October 25, 2012; the circuit court denied these motions because Williams voluntarily informed officers where the guns were located. Williams’s trial began on November 14, 2012, and ended the following day with the jury finding him guilty of the murder of Brown. The circuit court sentenced Williams to life imprisonment in the custody of the MDOC.
¶ 6. Williams filed a motion for a JNOV or, alternatively, a new trial. But his motion was denied. He filed the present *449 appeal and raises the following issues for review:
I. Williams[’s] statements to police regarding the location of the guns should not have been admitted into evidence because the statements were the results of impermissible promises made by law enforcement.
II. The [circuit] court erred in failing to grant the motion for [a] new trial[,] as the verdict was against the overwhelming weight of the evidence.
ANALYSIS
I. Admissibility of Evidence
¶ 7. When reviewing the admissibility of evidence, an appellate court employs the abuse-of-discretion standard. Dunn v. State, 111 So.3d 114, 115 (¶6) (Miss.Ct.App.2013) (citing Catchings v. State, 39 So.3d 943, 950 (¶29) (Miss.Ct.App.2009)). “Determining whether a confession is admissible is a finding of fact which is not disturbed unless the trial judge applied an incorrect legal standard, committed manifest error, or [made a decision] contrary to the overwhelming weight of the evidence.” Balfour v. State, 598 So.2d 731, 742 (Miss.1992).
¶ 8. On October 25, 2012, Williams filed a motion to suppress evidence seized, including statements made after an alleged illegal search. In his motion, Williams asserted that while he was in a holding cell in the booking area, he asked a booking officer if he could smoke a cigarette. The booking officer responded that he could not until Williams told him where the guns were located. Approximately an hour passed, and Williams asked to speak with the booking officer again. He told the booking officer that the guns were located in an abandoned house next door to Williams’s mother’s house. The guns were recovered from that location; Williams was then allowed to smoke a cigarette. According to Williams, his statement telling officers the location of the guns was solely a result of the promise of a cigarette. Additionally, Williams filed a second motion to suppress the guns seized as a result of his statement because police did not have proof the home was abandoned and failed to secure a search warrant to search the home. The circuit court denied these motions and said: “[T]he motion[s] to suppress will be denied ... because [Williams] previously gave statements, and ... this [ (the promise of a cigarette) ] does [not] involve anything of his freedom .... [I]t’s a cigarette and not anything involving freedom or leniency about the charge against him[.]”
¶ 9. There is no dispute that prior to asking the booking officer for a cigarette, Williams had been advised of his Miranda[1] rights and voluntarily waived them when he wrote two separate statements confessing his involvement with the murder of Brown. It was after he waived his Miranda rights and voluntarily wrote two statements that he requested a cigarette. The booking officer did tell Williams that he would give him a cigarette in exchange for information about the location of the guns used in the murder. The booking officer did not offer Williams any leniency for the crime. A defendant’s confession may be admissible only where the circuit judge finds the confession was intelligently, knowingly, and voluntarily made, rather than bargained for with promises, threats, or inducements by law enforcement officers. See Wilson v. State, 936 So.2d 357, 361 (¶ 8) (Miss.2006) (citing *450 Manix v. State, 895 So.2d 167, 180 (¶ 39) (Miss.2005)).
¶ 10. Based on our review of the record, we cannot find that the circuit court abused its discretion in allowing Williams’s statement about the location of the guns. Williams had been read his Miranda rights and waived them prior to giving his other statements. The waiver of those rights is not at issue, and there is no argument that Williams did not know his statements could be used against him. Also, it was Williams who initiated the conversation with the booking officer by requesting a cigarette. The factual situation before us is unique, as most cases involve whether a defendant was offered leniency in exchange for a confession. In the present case, there was not an offer of leniency or threats of increased prison time for failure to cooperate or provide information. Instead, Williams was provided with the cigarette he requested in exchange for information about the location of the guns.
¶ 11. Assuming arguendo that Williams’s statement was given as a result of a promise, no matter how slight, “[t]he Mississippi Supreme Court has held that ‘errors involving a violation of an accused’s constitutional rights may be deemed harmless beyond a reasonable doubt where the weight of the evidence against the accused is overwhelming.’” Singleton v. State, 1 So.3d 930, 936 (¶ 17) (Miss.Ct.App.2008) (quoting Clark v. State, 891 So.2d 136, 142 (¶ 29) (Miss.2004)). The weight of the evidence against Williams was overwhelming, as evidenced by his written confession and other testimony. The weight of the evidence will be discussed in more detail in the next issue.
¶ 12. We find that the circuit court’s decision to allow the statement — based on Williams’s valid waiver of his Miranda rights coupled with the facts that Williams initiated the contact with the law enforcement by requesting a cigarette and that the promise to give him a cigarette did not involve his freedom — was not error. Assuming it was error, it was harmless.
II. Motion for a New Trial
¶ 13. We review the trial court’s denial of a motion for a new trial under the abuse-of-discretion standard. Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005). A motion for a new trial is a challenge to the weight of the evidence. Beckum v. State, 917 So.2d 808, 812 (¶ 10) (Miss.Ct. App.2005) (citing Carr v. State, 774 So.2d 469, 472 (¶ 15) (Miss.Ct.App.2000)). This Court reviews challenges to the weight of the evidence by viewing “the evidence in the light most favorable to the verdict” and determining whether the verdict is “so contrary to the overwhelming weight of the evidence that to allow it to stand would bring about an unconscionable injustice.” Jones v. State, 95 So.3d 641, 647 (¶ 20) (Miss.2012) (citing Sanders v. State, 63 So.3d 497, 503 (¶ 18) (Miss.2011)). In reviewing the weight of the evidence supporting a verdict, this Court will not “pass upon the credibility of witnesses and, where the evidence justifies a verdict, it must be accepted as having been found worthy of belief.” Massey v. State, 992 So.2d 1161, 1163 (¶ 12) (Miss.2008) (citing Moore v. State, 933 So.2d 910, 922 (¶ 43) (Miss.2006)).
¶ 14. Williams argues that the overwhelming weight of the evidence did not support a finding that he committed deliberate-design murder. According to Williams, there was no fingerprint evidence presented linking him to the guns involved, and the State did not disprove that he acted in necessary self-defense. Williams ultimately contends that “[t]he jury based its guilty verdict on weak evidence[.]”
*451 ¶ 15. Natchez Police Officer Juan McDonald testified that Williams and Fort voluntarily came to the police department and initially acted as each other’s alibi. Williams was advised of his Miranda rights, which he waived. Williams gave a written statement denying his involvement with the murder. On May 31, 2011, two days later and after again waiving his Miranda rights, Williams gave another written statement in which he claimed that while in the graveyard, Brown pulled a gun and fired one shot. Williams stated he reacted to that and shot Brown one time, and that Fort took the gun from Williams and shot Brown several more times. Later that same day, Williams gave another written statement. In this final statement signed by him, Williams stated that he was the only one that shot Brown, and he shot him six times. As was explained above, Williams also informed the police officers of what weapons he used and where they were located. The police officers retrieved these weapons, and Williams identified them as the weapons he used to murder Brown.
¶ 16. Lieutenant Craig Godbold testified that the guns recovered from the abandoned home were two .357s and one .380. Lieutenant Godbold noted that one .357 had four spent shell casings; the other .357 had six spent shell casings. Another .380 was recovered approximately a foot from Brown’s body. A live .380 bullet was recovered from the scene, but no spent .380 shells were recovered.
¶ 17. Fort testified on behalf of the State that he, Williams, Brown, and Washington were going to “test” their pistols at the cemetery when the shooting occurred, meaning they were going to shoot the pistols. Fort testified that Brown and Washington had .380s, Williams had a .357, and he had a 9 millimeter. Fort further explained that when they arrived at the cemetery, he stayed in the van to talk to his girlfriend, while Williams, Washington, and Brown walked down the hill. After hearing shots, Fort saw Washington running back to the van. Washington told Fort that Brown was dead. Fort also testified that when Williams got back to the van, he pulled a pistol on him and Washington and threatened them not to tell.
¶ 18. Carl Fullilove, a forensic scientist with the Mississippi Crime Laboratory, testified that he could not “make a positive identification” of the projectiles recovered to any of the guns recovered, but that the projectiles could be shot from the .357s but not a .380 or other semiautomatic weapon. He explained that the recovered projectiles could not have identifying characteristics due to the condition of the barrel of the firearms or the condition of the projectiles when they were recovered. Thus, they would be incredibly difficult to match to a particular gun, but could be matched to a particular class of guns, like a .357. However, he did testify that four projectiles shared characteristics with one of the ,357s recovered, and the other two projectiles shared characteristics with the other .357 recovered.
¶ 19. Based upon this evidence, we do not find that the circuit court erred in denying Williams’s motion for a new trial, because the weight of the evidence supports the guilty verdict. We note that Williams did not testify, as was his right, and the jury was nevertheless allowed to give “full effect” to the State’s evidence against him. See White v. State, 722 So.2d 1242, 1247 (¶ 27) (Miss.1998). Williams’s voluntary written confession to murdering Brown is a strong piece of evidence supporting the jury’s finding Williams guilty of murder. Although in one of his confessions Williams claimed he shot Brown after Brown shot his gun, nowhere in his final confession did Williams claim he was *452 acting in self-defense. Also in his final confession, he acknowledged that he shot Brown six times; Brown had six gunshot wounds. This full confession to the crime was never called into question at trial. The jury also heard ballistics evidence, and although Fullilove could not testify positively that the projectiles came from the guns recovered, he did testify that the projectiles shared characteristics with the two .357s recovered — the same .357s Williams directed the police officers to recover from the abandoned home. The jury also considered the testimony of Fort. Although Fort was not an eyewitness, he testified that he heard the shots and that Williams threatened his life if he told what happened. Any concerns as to Fort’s credibility as a witness were for the jury to determine. See Harris v. State, 892 So.2d 830, 833 (¶ 9) (Miss.Ct.App.2004).
¶ 20. For the above reasons, we find this issue to be without merit.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF ADAMS COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO ADAMS COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).