# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2021-KA-00617-SCT

*L. J. GREEN III a/k/a LJ*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 04/19/2021 |
| TRIAL JUDGE: | HON. DAVID H. STRONG, JR. |
| TRIAL COURT ATTORNEYS: | JOE ROBERT NORTON, IV |
| | DEE BATES |
| | DIANE YVONNE JONES ACY |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | W. DANIEL HINCHCLIFF |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | DEE BATES |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 08/11/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KITCHENS, P.J., MAXWELL AND CHAMBERLIN, JJ.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1. The exclusionary rule prevents all evidence—including derivative evidence—obtained through unconstitutional means from being introduced at trial. Here, a probation officer improperly induced L.J. Green III to give a statement that led to the discovery of the linchpin evidence used against Green at his robbery trial. While the trial judge suppressed Green's statement, the judge still admitted evidence that Green possessed the victim's car

keys—evidence that was wholly derived from Green's excluded statement. This evidence was admitted over Green's objection. The jury convicted Green.

¶2. On appeal, both Green and the State agree the trial judge wrongly admitted the tainted evidence. Though the State claims the error was harmless, this evidence strongly contributed to Green's guilty verdicts. So its admission was not harmless error. We therefore reverse Green's conviction and sentence and remand the case for a new trial.

## FACTS AND PROCEDURAL HISTORY

¶3. In April 2020, three men, one of them brandishing a gun, forced their way into Alicia Sanders's home. The men took her purse, containing her cell phone and house and vehicle keys, and fled the scene. Sanders could not identify the assailants. She could only say they were African Americans of different heights—"shorter, midways and a taller one." But Sanders did notice they were in a car belonging to Cherish Brock Frost. And she was able to track her cell phone using a "find my device" application. She gave this information to the Brookhaven Police Department. Officers tracked the phone to a car owned by Frost. The car was parked behind L.J. Green III's apartment. Inside the car, officers found Sanders's purse. But they did not find her house or car keys. Green and Frost were arrested.

¶4. After being Mirandized,[1] Green initially admitted to a detective that he had gone to Sanders's apartment that night. But his claimed purpose was to buy drugs. And he insisted that when he got there, he stayed in the car. Shortly after Green gave this version to a detective, Green's probation officer, Bryan Cavin, arrived at the jail. Officer Cavin began

---

[1] *See **Miranda v. Arizona***, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

questioning Green about Sanders's missing keys. Cavin assured Green he would not place a hold on Green to detain him if Green would just tell Cavin where the keys were located.[2] Green eventually relented and told Cavin that Devin Kirtfield had the keys. Using this information, officers located Kirtfield and stopped him. When questioned about the keys, Kirtfield handed them over to an officer. Kirtfield also told the officers that Green had given him the keys.

¶5. A grand jury charged Green with conspiracy to commit armed robbery, armed robbery, and burglary of a dwelling.[3] Before trial, Green filed a motion in limine aimed at suppressing his statement to his probation officer. Following a hearing, the trial judge concluded Green's statement had been coerced and granted the motion to suppress Green's statement about giving the keys to Kirtfield. Green's attorney also argued that evidence derived from Green's statement should be excluded too. He asserted that law enforcement would not have approached Kirtfield had Green not told Officer Cavin he gave Kirtfield the keys. Still, the trial judge withheld ruling on the admissibility of Kirtfield's testimony until later in trial.

¶6. At trial, the State called Officer Alford, a detective with the Brookhaven Police Department. Green objected when Alford began testifying about the keys. The trial judge ruled that while he had already suppressed Green's statement, "whether the keys were found [was] a totally different animal." Green continued to emphasize that the specific basis for

---

[2] In other words, Green would be given the opportunity to bond out.

[3] Count One charged conspiracy to commit armed robbery in violation of Mississippi Code Sections 97-1-1 and 97-3-73 (Rev. 2020); Count Two charged armed robbery in violation of Mississippi Code Section 97-3-79 (Rev. 2020); and Count Three charged burglary of a dwelling in violation of Mississippi Code Section 97-17-23 (Rev. 2020).

his fruit of the poisonous tree "objection was that they found Kirtfield"—and the keys—based wholly on "the information that was obtained from [Green's excluded] statement." The trial judge was not swayed. He ruled, "I'm suppressing the statement. That's all I can do." And the judge allowed Alford to testify about finding the keys without mentioning Green. The judge also admitted a photo of the keys into evidence.

¶7. The State then called Kirtfield. Kirtfield identified Green, and he described being stopped by an officer and handing over the keys. He testified that he told the officer that Green gave him the keys. As Kirtfield put it, "[Green] just wiped his fingerprints off of them and just handed them to me and told me to hold them."

¶8. The victim, Sanders, also testified. Though she recounted the break-in at her apartment, she could only describe the three perpetrators as African American men of different heights—two had their faces covered; one did not. The judge denied Green's motion for a directed verdict. And the jury found Green guilty on all three charges. Green now appeals, asserting that evidence stemming from his involuntary confession should have been suppressed.

**STANDARD OF REVIEW**

¶9. When reviewing a trial court's denial of a motion to suppress, an appellate court employs a "mixed standard of review." *Dies v. State*, 926 So. 2d 910, 917 (Miss. 2006). "Determinations of reasonable suspicion and probable cause should be reviewed de novo." *Id.* (citing *Ornelas v. United States*, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911 (1996)). But a trial court's decision to admit or exclude evidence is reviewed under

4

the abuse-of-discretion standard. *Chamberlin v. State*, 989 So. 2d 320, 336 (Miss. 2008). The second standard applies here.

## DISCUSSION

### I. The trial judge wrongly admitted testimony about the victim's keys.

¶10. For a defendant's statement to be admissible, "it must have been given voluntarily, and not as the result of any promises, threats, or other inducements." *Chase v. State*, 645 So. 2d 829, 837-38 (Miss. 1994) (citing *Layne v. State*, 542 So. 2d 237, 240 (Miss. 1989)). Here, the trial judge found Green's statement and disclosures about Kirtfield's being the person who had Sanders's keys were not voluntary. Rather, the statement resulted from a promise by Green's probation officer that he would not seek that Green—who was already on probation—be detained. Based on this improper inducement, the judge excluded Green's statement. On appeal, the State agrees with the judge's ruling and with Green's argument that his statement was properly excluded. And so do we.

¶11. The State also agrees with Green's trial, and now appellate, assertion that all evidence stemming from his excluded statement was indeed inadmissible. And because this evidence was inadmissible, it should have been excluded as fruit of the poisonous tree. After review, we too agree the derivative evidence should have been excluded.

¶12. "The 'fruit of the poisonous tree' doctrine—also known as the exclusionary rule—'prohibits introduction into evidence of tangible materials seized during an unlawful search.'" *Marshall v. State*, 584 So. 2d 437, 438 (Miss. 1991) (quoting *Murray v. United States*, 487 U.S. 533, 536, 108 S. Ct. 2529, 2532, 101 L. Ed. 2d 472 (1988)). The doctrine

5

also prohibits admission of "testimony concerning knowledge acquired during an unlawful search." *Id.* (quoting *Murray*, 487 U.S. at 536). Of import here, the doctrine precludes "the introduction of *derivative evidence*, both tangible and testimonial, that is, the product of the primary evidence, or that is otherwise acquired as a result of the unlawful search, up to the point at which the connection becomes 'so attenuated as to dissipate the taint.'" *Id.* (quoting *Murray*, 487 U.S. at 536-37); *see also* ***Wong Sun v. United States***, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963)).

¶13.    While there are exceptions[4] to this doctrine, the State concedes none apply here. And this Court sees no applicable exceptions. So any evidence derived from Green's "tainted" statement—most notably Officer Alford's and Kirtfield's testimony about the keys—is fruit of the poisonous tree and, thus, inadmissible. Therefore, the trial judge abused his discretion by admitting this testimony and the photograph of the discovered keys.

## II.    Admission of Kirtfield's testimony was not harmless error.

¶14.    The State agrees the trial judge erred by allowing this tainted testimony. But it argues the error was harmless. *See* ***Clark v. State***, 891 So. 2d 136, 142 (Miss. 2004) ("[E]ven errors involving a violation of an accused's constitutional rights may be deemed harmless beyond a reasonable doubt where the weight of the evidence against the accused is overwhelming."

---

[4] Exceptions to the fruit of the poisonous tree doctrine have been carved out by the United States Supreme Court. *See, e.g.*, ***Silverthorne Lumber Co. v. United States***, 251 U.S. 385, 40 S. Ct. 182, 64 L. Ed. 319 (1920) ( "independent source" exception); ***Nix v. Williams***, 467 U.S. 431, 104 S. Ct. 2501, 81 L. Ed. 2d 377 (1984) ("inevitable discovery" exception).

(quoting *Riddley v. State*, 777 So. 2d 31, 35 (Miss. 2000))). To determine if a constitutional error is harmless, we decide "whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Gillett v. State*, 148 So. 3d 260, 266 (Miss. 2014) (quoting *Chapman v. California*, 386 U.S. 18, 23-24, 87 S. Ct. 824, 828, 17 L. Ed. 2d 705 (1967)).

¶15. While the stolen purse was found in Frost's car, parked behind Green's apartment, there were multiple assailants. And the victim, Sanders, could not identify Green as one of the robbers. Viewing this evidence alone, one could not reasonably say the State offered overwhelming evidence of Green's guilt. Rather, it was the tainted evidence from Green's excluded statement that not only pointed law enforcement to Kirtfield but also led to the recovery of the victim's keys. And this evidence also directly resulted in securing Kirtfield's testimony that Green gave him the keys after wiping his fingerprints off of them. There is zero question that this evidence, which should have been excluded, strongly contributed to the guilty verdicts. So we cannot find the judge's error in admitting this tainted evidence was harmless.

## CONCLUSION

¶16. We reverse Green's conviction and sentence, and we remand Green's case for a new trial, excluding the derivative testimony and evidence stemming from Green's involuntary statement.

¶17. **REVERSED AND REMANDED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**

7