ROBERTS, J.,
for the Court.
SUMMARY OF THE CASE
¶ 1. This criminal appeal arises from a casino robbery. On June 29, 2005, a jury sitting before the Tunica County Circuit Court found Latori Hillard guilty of armed robbery and conspiracy to commit armed robbery. On August 16, 2005, the circuit court sentenced Hillard to fifteen years for the armed robbery charge and four years for the conspiracy to commit armed robbery charge. Additionally, the circuit court set the conspiracy charge to run concurrent with the armed robbery charge.. Aggrieved, Hillard appeals and raises the following issue, listed verbatim:
I. WHETHER THE TRIAL COURT ERRED WHEN IT ADMITTED INTO EVIDENCE THE PRIOR, ACCUSATORY TESTIMONY OF MR. HILLIARD’S PUTATIVE ACCOMPLICE (MR. QUARRELS) [SIC], BUT FAILED TO AFFORD THE APPELLANT AN OPPORTUNITY TO CROSS-EXAMINE THE ALLEGED ACCOMPLICE?
¶ 1. Finding that the circuit court erred when it allowed the prosecution to submit evidence in violation of Hillard’s right to confront his accusers, we reverse and remand both Hillard’s conspiracy conviction and his armed robbery conviction for a new trial.
FACTS
¶ 2. This case arises from an armed robbery that took place at Harrah’s Casino in Tunica, Mississippi. At approximately 12:00 a.m. on September 12, 2003, Greg Hollis was working his shift as a cashier at the casino. Hollis worked inside what is commonly called “the cage.”
¶ 3. During Hollis’s shift, a man walked up to Hollis and tossed a piece of paper on the counter. Hollis initially thought the note was a coupon. When Hollis read the note and realized that the man had a pistol, he quickly understood that he was being robbed. The gunman told Hollis, “hurry up, don’t play me, f-.” The gunman passed Hollis a pillowcase and Hollis put money in it.[1]
¶ 4. Bobby Carmon, the surveillance supervisor for Harrah’s, observed that Hollis was being robbed. Carmon contacted the Tunica County Sheriffs Department and reported the robbery. Carmon also made a “dub” of the casino’s surveillance video system and called the security department.[2]
¶ 5. Barbara Kuchenmeister, the security lead at Harrah’s at the time of the robbery, received a report from the surveillance department that Hollis was being robbed. Kuchenmeister ran towards the cage. As she entered the casino floor, she saw two men run in the opposite direction. Kuchenmeister followed them out of the casino entrance where she saw a white car with a dark roof leave the parking lot. Kuchenmeister returned to the cage, posted a guard there, and called Bob Casey, the security manager for Harrah’s. Casey went to the casino and waited for authorities to arrive.
*227 ¶ 6. Nathaniel Dawson, a deputy with the Tunica County Sheriffs Department, was on his way to Harrah’s in response to Cannon’s robbery report. Before he arrived, he saw a white Ford car that matched Kuchenmeister’s description of the car that left Harrah’s. After the white Ford ran a stop sign, Deputy Dawson turned on his blue lights, stopped the white Ford, and radioed for assistance.
¶ 7. Deputy Dawson found one person in the white Ford. That occupant was Mario Clark. Deputy Dawson placed Clark in handcuffs, put him in the back seat of his patrol car, and waited for Allen Thompson, an agent with the Mississippi Bureau of Investigations. After Clark consented to a search of the car, Agent Thompson found a .32 caliber revolver in the glove compartment. Clark claimed that he owned the pistol. A subsequent check with the NCIC database revealed that the pistol had been reported as stolen. Agent Thompson had the white Ford towed to the crime lab.
¶ 8. Meanwhile, Detective Sheila McKay of the Tunica County Sheriffs Department was on her way to the casino. Before she arrived, she found a hat and a pillow case on the side of the road. Detective McKay collected the hat and pillow case and continued to the casino.[3] At the casino, Detective McKay reviewed the surveillance footage. According to Detective McKay, she recognized the man who robbed Hollis as Latori Hillard.
¶ 9. Hillard turned himself into custody on September 15, 2003. To be exact, Hil-lard’s father called the Tunica County Sheriffs Department and asked Deputy Dennis Allen to pick up Hillard. Deputy Allen met with Hillard’s father and took Hillard into custody. Within an hour, Agent Thompson met with Hillard. Agent Thompson fingerprinted Hillard and later delivered those fingerprints to Steve Chancellor at the Mississippi Crime Lab.
¶ 10. Chancellor, a crime scene investigator with the Mississippi Bureau of Investigations, processed the white Ford for fingerprints. Chancellor found nineteen sets of latent fingerprints on the car’s exterior. However, he was not able to find any fingerprints inside the car. Agent Chancellor collected the fingerprints but he could not say to whom the prints belonged. Andre Nagoski of the Mississippi Crime Lab, however, compared Hillard’s fingerprints with the latent prints from the exterior of the white Ford. Nagoski found that ten sets of prints taken from the exterior of the Ford matched the fingerprints Agent Thompson collected from Hil-lard.
PROCEDURAL HISTORY
¶ 11. On February 8, 2005, the Tunica County Grand Jury returned an indictment against Hillard. By that indictment, the grand jury charged Hillard with armed robbery and conspiracy to commit armed robbery. Hillard pled not guilty. Accordingly, the matter proceeded to trial. On the first day of trial, the prosecution called Greg Hollis, Deputy Dawson, Detective McKay, Agent Thompson, Agent Chancellor, and Andre Nagoski. After Nagoski testified, the court recessed for the evening.
¶ 12. The next morning, the prosecution intended to call Ronnie Quawrells as a witness. Prior to Hillard’s trial, Quawrells had been convicted of conspiracy to commit armed robbery of the same crime for which Hillard faced trial. When deputies retrieved Quawrells, he refused to testify against Hillard. The circuit court judge warned Quawrells that he would be in *228 contempt if he continued to refuse to testify. Regardless, Quawrells remained adamant that he would not testify against Hillard. The circuit court judge found Quawrells in contempt and ordered him returned to custody. An hour later, the circuit court judge again ordered Quaw-rells before the court. Again, Quawrells refused to testify against Hillard.
¶ 13. Quawrells’s testimony severely implicated Hillard as the principle participant in the casino robbery. Because Quawrells refused to testify, the prosecution sought alternative means to introduce Quawrells’s prior testimony. The prosecution sought to read Quawrells’s prior testimony before the jury.
¶ 14. Hillard objected and sought to exclude Quawrells’s prior testimony. Hil-lard submitted that his Sixth Amendment right to confront witnesses against him would be violated if the circuit court allowed the prosecution to read Quawrells’s prior testimony before the jury. Hillard noted that he never had an opportunity to cross-examine Quawrells during Quaw-rells’s conspiracy trial and he would not be able to cross-examine Quawrells if his pri- or testimony was read to the jury.
¶ 15. The prosecution argued that Hil-lard’s Sixth Amendment rights would not be violated if the circuit court allowed Quawrells’s prior testimony to be read into evidence because certain factors of reliability indicated that Quawrells’s prior testimony was trustworthy. The circuit court agreed with the prosecution. The prosecution read Quawrells’s prior testimony before the jury.
¶ 16. In his prior testimony, Quawrells implicated Hillard and attempted to exhon-erate himself. Quawrells testified that Hillard wanted to rob Harrah’s and that Hillard “staked out” Harrah’s prior to the robbery. Quawrells also testified that he did not take Hillard seriously. However, Quawrells testified that he saw Hillard brandish a pistol and take a pillowcase full of money from the cashier at Harrah’s. Naturally, Hillard was not able to cross-examine Quawrells. The prosecution rested after Quawrells’s prior testimony was read into the record.
¶ 17. Hillard then presented an alibi defense. Hillard called Jack Thomason. Thomason testified that, on the night of the robbery, Hillard was at the Delta Bluff Apartments in Walls, Mississippi until approximately 11:30 p.m. or 12:00 a.m. Tho-mason did not see Hillard after 12:00 a.m. On cross-examination, Thomason testified that Walls was approximately fourteen miles from the casino and that one could drive to the casino from Walls in about ten to fifteen minutes.
¶ 18. Notwithstanding Hillard’s alibi defense, the jury found Hillard guilty of both armed robbery and conspiracy to commit armed robbery. Hillard appeals.
ANALYSIS
I. WHETHER THE TRIAL COURT ERRED WHEN IT ADMITTED INTO EVIDENCE THE PRIOR, ACCUSATORY TESTIMONY OF MR. HILLIARD’S PUTATIVE ACCOMPLICE (MR. QUARRELS), [SIC] BUT FAILED TO AFFORD THE APPELLANT AN OPPORTUNITY TO CROSS-EXAMINE THE ALLEGED ACCOMPLICE?
¶ 19. Hillard claims the circuit court erred when it allowed the prosecution to read Quawrells’s prior testimony before the jury. According to Hillard, the circuit court violated his Sixth Amendment right to confront his accusers. Hillard submits that reversible error resulted.
¶ 20. The admissibility of evidence rests within the circuit court’s dis *229 cretion. Peterson v. State, 671 So.2d 647, 655 (Miss.1996). If the circuit court incorrectly perceived the applicable legal standard in its fact findings, this Court applies a substantially broader standard of review. Id. at 656. The circuit court must exercise its discretion within the Mississippi Rules of Evidence. Id. We will reverse when the circuit court abuses its discretion and, even then, only if that abuse of discretion causes prejudice to the opposing party. Id.
¶ 21. Hillard claims that, by permitting the prosecution to read Quawrells’s prior testimony, the circuit court violated the United States Supreme Court’s decision in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). In Crawford, the United States Supreme Court held that “the Confrontation Clause of the Federal Constitution’s Sixth Amendment bars the admissibility of out-of-court testimonial statements by an unavailable witness offered in a criminal trial to prove the truth of a matter asserted (also known as hearsay) unless the defendant has had a prior opportunity to cross-examine the witness about the statement.” Frazier v. State, 907 So.2d 985(¶ 36) (Miss.Ct.App.2005).
¶ 22. As a result, “testimonial hearsay must be exposed to confrontation by way of cross-examination prior to reaching admissible status, while non-testimonial hearsay does not trigger the need for confrontation to be admissible.” Id. at (¶ 39). “Thus, our application of Crawford to the present facts depends upon a determination of whether the evidence admitted is ‘testimonial.’ ” Id. Crawford declined to provide a firm definition of “testimonial” evidence. Crawford, 541 U.S. at 68, 124 S.Ct. 1354. Even so, Crawford did provide examples of “testimonial” evidence. Id. According to Crawford, prior testimony at a preliminary hearing, before a grand jury or at a former trial, and prior testimony during police interrogations, are all examples of “testimonial” evidence. Id.
¶ 23. Under Rule 801(c) of the Mississippi Rules of Evidence, “[hjearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” (internal quotations omitted). “Hearsay is not admissible except as provided by law.” M.R.E. 802. The prosecution read Quaw-rells’s prior testimony into the record. The record contains no indication that the prosecution introduced Quawrells’s prior testimony for any purpose other than to prove the truth of the matter asserted— that Hillard robbed the casino.
¶24. We now address whether Quaw-rells’s prior testimony was “testimonial” evidence. Applying Crawford we find that it is most assuredly “testimonial.” Crawford specifically lists prior testimony at a former trial as one of the examples of “testimonial” evidence that must be subjected to cross-examination. There is no doubt that Hillard did not get an opportunity to cross-examine Quawrells at Quaw-rells’s trial, nor did Hillard get to cross-examine Quawrells at his own trial. Accordingly, we find that the circuit court erred when it allowed the prosecution to read Quawrells’s prior testimony into evidence.
¶ 25. Having found that the circuit court erred when it allowed the prosecution to introduce Quawrells’s prior testimony, we now consider whether Hillard was prejudiced by the admission of that evidence. We are of the opinion that Hillard was most certainly prejudiced. True enough, Hollis identified Hillard as the man who robbed him and Detective McKay identified Hillard from the casino surveillance footage. Still, Quawrells testified as a direct witness to Hillard’s involvement and participation in the planning and *230 execution of the robbery. Quawrells was the only witness to testify as to Hillard’s actions after the robbery. Quawrells offered the testimony that tied the prosecution’s case together. As such, we find that reversible error resulted.
¶ 26. Our decision affects both Hillard’s conspiracy conviction and his armed robbery conviction. We must reverse and remand Hillard’s conspiracy conviction. To prove a prima facie case of conspiracy, the prosecution bears the burden of proving, beyond a reasonable doubt, that two or more people recognized their entry into a common plan to commit a crime and that they knowingly intended to further the plan’s common purpose. Miss.Code Ann. § 97-l-l(a)(h) (Rev.2000); Franklin v. State, 676 So.2d 287, 288 (Miss.1996).
 ¶ 27. Without Quawrells’s testimony, there is absolutely no evidence that Hillard formed a “union of the minds” to commit armed robbery. The State submits that, even lacking Quawrells’s testimony, there existed sufficient evidence to sustain Hillard’s conspiracy conviction in that the person seen leaving the casino, allegedly Hillard, was seen leaving with another person. Even under the appropriate standard of review, as favorable as it is to the State, Hillard’s having been seen leaving the casino does not demonstrate that Hillard formed a union of the minds with fellow conspirators. True enough, a conspiracy agreement may be inferred from the circumstances by “declarations, acts, and conduct of the alleged conspirators.” Id. Even so, the only discernable inference that Hillard left the casino with another person is exactly that. That evidence could be interpreted a number of ways. It could indicate conspiracy, but it could also indicate guilt as an accessory after the fact. In any event, such proof, without more, does not rise to the level of proof beyond a reasonable doubt.
¶ 28. We find that, discounting the inadmissible evidence, there was quite meager evidence to sustain Hillard’s conviction. However, all the evidence admitted at trial was sufficient to sustain Hil-lard’s conviction. Where we, on review, find the circumstances as we do, the proper result is to reverse and remand. See Campbell v. State, 798 So.2d 524(¶27) (Miss.2001) (Justice Banks, concurring in part and dissenting in part) (citing Lockhart v. Nelson, 488 U.S. 33, 40, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988)). “Even when the only evidence on an issue has been declared inadmissible, the proper procedure is to remand.” Gavin v. State, 785 So.2d 1088(¶ 28) (Miss.Ct.App.2001) (emphasis in original). Accordingly, our standard of review requires that we reverse Hillard’s conspiracy conviction and remand this matter to the circuit court for a new trial.
¶ 29. As for Hillard’s armed robbery conviction, we must reverse it and remand it for a new trial, as well.
Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of armed robbery. ...
Miss.Code Ann. § 97-3-79 (Rev.2006). The prosecution’s case hinged upon (a) Hollis’s eyewitness identification of Hil-lard, (b) Detective McKay’s identification of Hillard according to her review of the casino surveillance footage, and (c) Quaw-rells’s eyewitness testimony, elicited dim-ing his own trial, as to the events prior to, during, and after the robbery. Without Quawrells’s testimony, the weight of proof of Hilliard’s guilt is substantially di *231 minished. True .enough, the prosecution presented evidence from Hollis, who identified Hillard during a brief and tense encounter under a threat of violence. While it is true that Hollis identified Hillard as the man that robbed him at gunpoint and Detective McKay testified that, according to her review of the casino surveillance footage, Hillard robbed Hollis, we must reverse and remand for a new trial. Where prejudice from an erroneous admission of evidence dims in comparison to other overwhelming evidence, we may refuse to reverse. Carter v. State, 722 So.2d 1258 (¶ 14) (Miss.1998). Here, we cannot say that Quawrells’s testimony dims in comparison to Hollis’s testimony or Detective McKay’s.
¶ 30. Quawrells directly implicated Hil-lard as the gunman, while Detective McKay testified that, according to her review of surveillance footage, Hillard was the gunman. As for Hollis, Hillard’s counsel pointed out inconsistencies in Hollis’s identification. Hollis had previously described the gunman as having worn sunglasses. At trial, Hollis testified that the gunman did not wear sunglasses. Hollis further testified that he mistakenly thought the gunman wore sunglasses because the gunman wore a hat that cast a shadow over his eyes. We find that the evidence against Hillard is such that we must not discharge his conviction. However, under the precise circumstances of this case, we find that the proper course of action is to reverse and remand for a new trial consistent with this opinion.
¶ 31. THE JUDGMENT OF THE TU-NICA COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, ARMED ROBBERY AND SENTENCE OF FIFTEEN YEARS AND COUNT II, CONSPIRACY TO COMMIT ARMED ROBBERY AND SENTENCE OF FOUR YEARS TO RUN CONCURRENTLY TO SENTENCE IN COUNT 1, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS REVERSED AND REMANDED FOR A NEW TRIAL CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO TUNICA COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR.

. Mary Guillon, the "cage shift manager” at Harrah’s was asked to "count the drawer down because there had been a robbery.” Guillon counted the money and, by deducting the remaining money from the amount that should have been present, Guillon concluded that the robber took slightly more that $42,000.

. According to Carmon's trial testimony, "[a] dub is a composite of several tapes ... combined into one.”

. Detective McKay later gave the hat and pillow case to Agent Thompson.