# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-00948-COA

ANTHONY DAVON JEFFERSON A/K/A            APPELLANT
ANTHONY DEVON JEFFERSON A/K/A
ANTHONY JEFFERSON A/K/A MARCUS ROSS
A/K/A WESLEY THOMPSON A/K/A ANTHONY
DAVIS JEFFERSON

v.

STATE OF MISSISSIPPI                           APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/15/2013 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN III |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES PHILLIP BROADHEAD WILLIAM ANDY SUMRALL |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD JASON L. DAVIS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF COUNT I, POSSESSION WITH INTENT TO SELL ONE KILOGRAM BUT LESS THAN FIVE KILOGRAMS OF MARIJUANA, AND SENTENCED TO SIXTY YEARS AS A HABITUAL OFFENDER; AND COUNT II, CONSPIRACY TO POSSESS ONE KILOGRAM BUT LESS THAN FIVE KILOGRAMS OF MARIJUANA, AND SENTENCED TO FORTY YEARS AS A HABITUAL OFFENDER, WITH THE SENTENCES TO RUN CONCURRENTLY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | AFFIRMED - 11/01/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., FAIR AND GREENLEE, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.     This is an appeal from Madison County Circuit Court of the jury-trial conviction of Anthony Jefferson for possession of marijuana and conspiracy to possess marijuana. On appeal, Jefferson asserts error because the circuit court allowed testimony about Jefferson's prior oral statement to police; because testimony and opening statements included references to an out-of-court statement of Paulette Jefferson (Paulette), who did not testify; and because the court failed to grant Jefferson's motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. Finding no error, we affirm.

## FACTS AND PROCEEDINGS BELOW

¶2.     On August 17, 2011, Dominick Riley, United States postal inspector, became suspicious of a package mailed from California to Canton, Mississippi. The package's sender's name did not match the sender's address. Also, the package came from California, a "source state" for narcotics shipping in the United States. Riley contacted the Mississippi Bureau of Narcotics (MBN), whose K-9 unit later alerted to the presence of narcotics in the package. After securing a federal search warrant, the package was opened, and approximately two kilograms of marijuana was discovered. Riley and MBN coordinated to execute a controlled delivery of the package addressed to "the Jefferson family" at "331 Dobson Avenue, number two," Canton, MS 39046.

¶3.     At the August 18, 2011 controlled delivery, Riley represented himself as a postal worker delivering the package, while MBN agents observed. When Riley knocked on the

2

door at the address, Paulette came out of the house. Riley asked Paulette if she was expecting a package. She said that she was and signed for the package using a false name (Paulette Hackett). Riley handed the package to Paulette and left. The observing MBN agents, Candace Edwards and Anthony Moser, her partner, were in their vehicle. They watched Paulette take possession of the package, then turn to reenter the house. Edwards next observed Paulette look at Edwards's vehicle, throw the package to the ground, and run back into the house. Moser then quickly exited the vehicle in pursuit of Paulette, followed by Edwards.

¶4.    Pursuing Paulette into the home, Edwards and Moser discovered two females, one male, a loaded shotgun, and misdemeanor amounts of illegal substances. While at the scene, Edwards learned from the occupants of the home that Jefferson and his father were en route to the location to retrieve the marijuana. Jefferson and his father arrived at the house and were told to get out of their vehicle and put their hands up, to which they complied. Wesley Layton, the supervising MBN agent, arrived on the scene shortly after. Layton testified that after he arrived, he observed Jefferson and his father in handcuffs, and approached them intending to resolve the identities of the two men. After he approached Jefferson, he asked him "[what was] going on, you know, who he was." In his response, Jefferson told Layton that the package was his.[1]

_____

[1] Jefferson's counsel contemporaneously objected to Layton's testimony on anything that Jefferson said to Layton while he was in handcuffs unless Layton could prove that Jefferson had been read his *Miranda* rights, as he asserted Jefferson was under arrest and in handcuffs. The circuit court overruled the objection on the basis that the questioning was

¶5.     The next day, Edwards and Moser informed Jefferson of his *Miranda* rights, which he waived via a written waiver form that he signed twice. According to the agents, Jefferson told them that he knew the package was coming, that he arranged for an individual in California to send the package, and that he intended to sell the marijuana. He also made a written statement in which he reiterated that he knew the package was coming, but recanted that he knew what was in the package. Jefferson and Paulette were indicted for possession of marijuana and conspiracy to possess marijuana. The case proceeded to trial, which commenced on May 15, 2012.

¶6.     A suppression hearing was held on May 14, 2012, the day before trial, at which Jefferson was present. Paulette's out-of-court statement was not discussed at the suppression hearing, other than a reference made to it by Edwards while testifying to other matters. The court considered Jefferson's oral and written statements during his interrogation to be voluntary and allowable at trial. After conclusion of the suppression hearing but before trial began, Jefferson voluntarily fled. The court commenced trial the next day after having found that Jefferson was voluntarily, wilfully, and deliberately absent from trial and, as a result, waived his right to be present at trial. Neither the State nor Jefferson's counsel objected to the court's finding.

¶7.     In opening statements, the State stated that it expected the proof to show that statements were made by Paulette that implicated Jefferson. Jefferson's counsel

only to resolve the ambiguous situation of Jefferson's and his father's identities. Jefferson does not appeal the admission of Layton's testimony.

4

contemporaneously objected to the mention of any statements made by Paulette. The trial judge overruled the objection, noting that the statement was made as part of opening statements.

¶8. During trial, the trial court allowed Edwards's and Moser's testimony regarding Jefferson's verbal statement in addition to the written statement of Jefferson. Edwards was also allowed to testify regarding the course of her investigation and how it unfolded. Jefferson's counsel also contemporaneously objected to the respective parts of their testimony that mentioned statements made to them by Paulette as inadmissible hearsay. The circuit court overruled the objections, noting that there could be no mention that Paulette made the statement, but that their testimony would be allowed to explain the course of their investigation and why they acted as they did in remaining at the residence after having detained all the occupants.

¶9. Specifically, at trial, Edwards testified: "[I was] advised that someone was supposed to contact Mr. Jefferson and advise him that the box had been received[,] and . . . the plan was that he was going to come get it because the person at the residence had spoken to Mr. Jefferson or someone significant to Mr. Jefferson, earlier in the day to advise the female who sent the box that it should be coming." Further, Edwards testified that she "learned [Jefferson] was already en route to the residence . . . with an individual[,] . . . [a]nd when they arrive[d], [they were] going to come to the residence, and the reason they were coming to the residence was to retrieve the package." Paulette never testified.

¶10.    In a jury trial, Jefferson was convicted of possession of marijuana in an amount more than one kilogram but less than five kilograms with intent to distribute, and conspiracy to possess marijuana in an amount greater than one kilogram but less than five kilograms. Jefferson moved for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, which was denied. Jefferson now appeals to this Court.

**DISCUSSION**

¶11.    Jefferson asserts the trial court erred because it admitted testimony on Jefferson's verbal confession, because it admitted testimony from Edwards about the questioning of Paulette, because of an improper comment during opening statements about a statement from Paulette when she was not going to be a witness, because it denied the motion for a JNOV, and because it denied the motion for a new trial.

### I.    Admission of Verbal Confession

¶12.    Jefferson argues that the trial court erred in refusing to suppress his verbal confession. He argues that because it is in conflict with his written statement, it is inadmissible. "Whether a confession is admissible is a fact-finding function for the trial court, and its decision will not be overturned unless the trial court applied an incorrect legal standard, committed manifest error, or made a decision against the overwhelming weight of the evidence." *Haynes v. State*, 934 So. 2d 983, 988 (¶15) (Miss. 2006) (citations omitted). "Once a trial judge has determined, at a preliminary hearing, that a confession is admissible, the defendant/appellant has a heavy burden in attempting to reverse that decision on appeal." *Payton v. State*, 897 So. 2d 921, 935 (¶29) (Miss. 2003) (citation omitted). "The prosecution has the burden of

6

proving beyond a reasonable doubt that the confession was voluntary. The State meets its burden and makes a prima facie case when an officer or other person who has knowledge of the facts testifies that the confession was made voluntarily, without threats, coercion, or offer of reward." *Id*. at (¶30).

¶13.    At the suppression hearing, the State presented the testimony of both Edwards and Moser in support of allowing testimony regarding the verbal confession to be admitted. Jefferson testified that he stated to the agents that he did not know the contents of the package, but was expecting the package. Jefferson agreed that he signed a *Miranda* waiver at the beginning of the interview, and made his written statement at the end of the interview. Jefferson testified that the interview only lasted approximately thirty minutes. Edwards and Moser both testified, contrary to Jefferson's claim, that Jefferson stated to them at the post-*Miranda* interview that he knew the package was coming, that he arranged for an individual in California to send the package, and that he intended to sell the marijuana. Further, they testified that the interview lasted approximately two hours. Jefferson's *Miranda* waiver, which was made at the beginning of the interview, was signed at 3:43 p.m., and his written statement, which was made at the end of the interview, was signed at 5:17 p.m. Jefferson could provide no explanation for the more-than-one-hour discrepancy between the signing times and how long he said the interview lasted.

¶14.    The trial court did not abuse its discretion in finding that Jefferson's version of what occurred during the interview was not credible. Further, the fact that the verbal confession

7

was neither reduced to writing and signed nor recorded did not render it inadmissible. *Cobb v. State*, 734 So. 2d 182, 184-85 (¶¶5-7) (Miss. Ct. App. 1999) (Testimony to exclude a confession will not suffice if it is contradicted by competent evidence that the statements were, in fact, made.). Thus, we find this claim is without merit.

## II.  Statements Made by Paulette Jefferson

¶15.    Jefferson asserts the prosecution erred during opening statements in saying that it intended to prove statements made by Paulette. Jefferson further asserts that the trial court erred by allowing Edwards and Moser to testify regarding the investigation.

### A.  Opening Statement

¶16.    Jefferson argues the prosecution erred when in opening statements the prosecution stated that it intended to prove Paulette said the package was not hers, that the package was Jefferson's, and that Jefferson told her to sign for it, because the prosecution could not have reasonably expected it would be able to offer those statements into evidence. Specifically, Jefferson takes issue with the prosecution stating: "[E]vidence is going to show that, upon questioning, . . . [Paulette] said, look [that is] not my package[.]" Jefferson contemporaneously objected to the prosecutor's opening statement. During trial the statement of Paulette was not introduced. The standard of review for an improper comment in opening statements is "whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created." *Slaughter v. State*, 815 So. 2d 1122, 1130 (¶45) (Miss. 2002). The trial court instructed the jury that opening statements and the arguments made in them are neither

evidence nor instructions on the law. The Mississippi Supreme Court has found that properly instructing the jury that opening statements are not evidence is generally sufficient to mitigate against attorneys stating what they expect the proof to show and the proof not following the expectation laid out in opening statements. *Id*. at 1131-32 (¶¶52-53). Thus, we find this claim is without merit.

### B.    Testimony

¶17.    Jefferson asserts that the trial court erred by allowing course-of-investigation testimony from Edwards because the testimony contained information obtained from Paulette that should have been excluded as impermissible hearsay and a violation of his Confrontation Clause right to confront adverse witnesses.

¶18.    Confrontation Clause objections are reviewed de novo. *Birkhead v. State*, 57 So. 3d 1223, 1233 (¶35) (Miss. 2011) (citation omitted). Hearsay is "a statement that . . . the declarant does not make while testifying at the current trial or hearing[,] and a party offers in evidence to prove the truth of the matter asserted in the statement." M.R.E. 801(c). In general, hearsay is inadmissable unless otherwise provided by law. *Hillard v. State*, 950 So. 2d 224, 229 (¶23) (Miss. Ct. App. 2007); M.R.E. 802. "Testimonial hearsay must be exposed to confrontation by way of cross-examination prior to reaching admissible status, while nontestimonial hearsay does not trigger the need for confrontation to be admissible." *Hillard*, 950 So. 2d at 229 (¶22).

¶19.    An officer's testimony being offered to explain why he or she acted as he or she did, and not for the truth of the matter asserted, is not hearsay and is admissible. *Neal v. State*, 15

So. 3d 388, 404 (¶36) (Miss. 2009); *see also Darnell v. Darnell*, 167 So. 3d 195, 202 (¶¶16-17) (Miss. 2014).[2] Information obtained in the course of an investigation is admissible when it is for providing the basis of the investigation and ultimate arrest of the defendant. *Kolberg v. State*, 829 So. 2d 29, 76-77 (¶¶133-34) (Miss. 2002) (overruled on other grounds).

¶20.    Here, as part of Edwards's testimony, she stated that, based on statements Paulette made to her at the scene, she came to learn that individuals at the residence were supposed to contact Jefferson to let him know the package had arrived, that he was expected to come to the residence to retrieve the package, and that he was already en route to the location with his father. Jefferson's counsel contemporaneously objected to Edwards's reference to Paulette's statement. The court overruled Jefferson's objection on the basis that the statement was not being offered to prove the truth of the matter asserted, but to demonstrate why Edwards and her fellow agents acted as they did, justifying why they waited at the residence.

¶21.    Edwards's statements were not hearsay, nor were they testimonial of what Paulette said. Paulette did not testify at trial. Edwards's testimony did not mention Paulette and was not used or admitted for what Paulette said, but to explain why the officers remained at the residence awaiting the arrival of Jefferson. Thus, we find that the circuit court was correct in holding that such testimony was admissible and not hearsay, as it was provided for the basis of why the agents acted as they did and was not offered for proof of the matter asserted. Thus, this issue is without merit.

---

[2] *See also* Parham Williams, *Williams on Mississippi Evidence* § 8.06[3] (2016).

¶22. Even if we were to find the testimony inadmissible, its admission at trial was harmless error. There was sufficient other evidence to prove that Jefferson conspired with Paulette to possess the marijuana: the package contained marijuana, Paulette accepted the package, Paulette stated to Riley that she was expecting a package, Paulette signed for the package using a false name, and Paulette threw the package to the ground after she spotted officers observing her receiving the package. Jefferson admitted to Edwards and Moser (1) that the marijuana was his, (2) that he had it sent to the house, and (3) that he intended to sell it in Mississippi, all after Jefferson had signed a written *Miranda* waiver. Thus, we find this issue is without merit.

### III. Denial of Jefferson's Motion for a JNOV or New Trial

¶23. Jefferson asserts that the trial court erred in denying his motion for a JNOV or, in the alternative, a new trial because the evidence presented at trial was not legally sufficient and was against the overwhelming weight of the evidence for both the conspiracy and possession-with-intent-to-sell charges.

### A. Sufficiency of the Evidence

¶24. The critical inquiry in addressing a challenge to the sufficiency of evidence "is whether the evidence shows beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction." *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005) (quoting *Carr v. State*, 208 So. 2d 886, 889 (Miss. 1968)). "The relevant question is whether, after viewing the

11

evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. (citing *Jackson v. Virginia*, 443 U.S. 307, 315 (1979)).

¶25. On appeal, Jefferson asserts he never possessed the marijuana and that he did not conspire with Paulette to possess the marijuana. "Possession of a controlled substance may be actual or constructive." *Knight v. State*, 72 So. 3d 1056, 1063 (¶26) (Miss. 2011) (citing *Dixon v. State*, 953 So. 2d 1108, 1112 (¶9) (Miss. 2007)). "Constructive possession may be established where the evidence, considered under the totality of the circumstances, shows that the defendant knowingly exercised control over the contraband." *Id*. Admitting to ownership of the illegal substance is sufficient for possession. *Mitchell v. State*, 754 So. 2d 519, 522 (¶10) (Miss. Ct. App. 1999). Jefferson admitted to ownership of the marijuana in his confession to Edwards and Moser as well as at the scene the day he was arrested. Further, he admitted that he arranged to have the marijuana sent to the house. We find there was sufficient evidence to support the jury's finding that Jefferson possessed the marijuana. Thus, this issue is without merit.

¶26. To prove a conspiracy, the State must prove that "two or more persons agreed to commit a crime or agreed to accomplish an unlawful purpose." *Berry v. State*, 996 So. 2d 782, 787 (¶12) (Miss. 2008) (citations omitted); Miss. Code Ann. § 97-1-1 (Rev. 2014). No express or formal agreement need be proven. *Berry*, 996 So. 2d at 787 (¶13). "A conspiracy can be proven by the acts and conduct of the alleged conspirators and can be inferred from

the circumstances." *Id*. Jefferson admitted that the package was his, that he sent the package to the house, and that he intended to take the marijuana and sell it. Paulette received the box from Riley, told Riley she was expecting a package, signed for it using a false name, and threw the package to the ground upon spotting the officers. Further, Jefferson arrived at the scene to collect the package and admitted ownership. The jury found, based on the acts and conduct of Paulette and Jefferson, that they conspired to possess the marijuana. We find that the evidence was sufficient to support the jury's finding. Thus, this issue is without merit.

### B.     Weight of the Evidence

¶27.    When reviewing a claim that a conviction is against the weight of the evidence, this Court will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. *Bush*, 895 So. 2d at 844 (¶18) (citing *Herring v. State*, 691 So. 2d 948, 957 (Miss. 1997)). A reversal on the grounds that the verdict was against the overwhelming weight of the evidence means that, "as the thirteenth juror, the court simply disagrees with the jury's resolution of the conflicting testimony." *Id*. (citing *McQueen v. State*, 423 So. 2d 800, 803 (Miss. 1982)). "[The] difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves." *Id*. "Instead the proper remedy is to grant a new trial." *Id*.

¶28.    At trial, evidence was presented that Jefferson confessed to ownership of the marijuana, that he had it sent to the house, and that he was going to sell it. Evidence was also presented demonstrating that Paulette said she was expecting a package, that she used a false name to sign for it, that she threw it to the ground when she spotted officers observing her,

13

that Jefferson came to the house to get the package, and that Jefferson admitted ownership of the package. We agree with the decision of the jury. Thus, we find this issue is without merit.

## CONCLUSION

¶29.    We affirm the Madison County Circuit Court's conviction of Jefferson for possession of marijuana with the intent to sell in an amount greater than one kilogram but less than five kilograms and for conspiracy to possess marijuana in an amount greater than one kilogram but less than five kilograms, and his sentence as a habitual offender.

¶30.    **THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, POSSESSION WITH INTENT TO SELL ONE KILOGRAM BUT LESS THAN FIVE KILOGRAMS OF MARIJUANA, AND SENTENCE OF SIXTY YEARS AS A HABITUAL OFFENDER; AND COUNT II, CONSPIRACY TO POSSESS ONE KILOGRAM BUT LESS THAN FIVE KILOGRAMS OF MARIJUANA, AND SENTENCE OF FORTY YEARS AS A HABITUAL OFFENDER, WITH THE SENTENCES TO RUN CONCURRENTLY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MADISON COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON AND FAIR, JJ., CONCUR. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION. BARNES AND WILSON, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**